# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| MELISSA BELGAU, *et al.*,<br><br>              Plaintiffs,<br><br>v.<br><br>JAY R. INSLEE, *et al.*,<br><br>              Defendants. | NO. 3:18-cv-5620<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION**<br><br>**NOTE ON MOTION CALENDAR: OCTOBER 5, 2018** |

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR A PRELIMINARY INJUNCTION
NO. 3:18-CV-5620     1


Legal@FreedomFoundation.com
360.956.3482 | FreedomFoundation.com
WA | PO Box 552, Olympia, WA 98507
OR | PO Box 18146 Salem, OR 97305

# I. INTRODUCTION & REQUESTED RELIEF

Plaintiffs respectfully request this Court enjoin the continued deduction of union fees from their wages because such deductions violate their First Amendment rights and escrowing Plaintiffs' money is insufficient to alleviate the irreparable harm.[1]

# II. BACKGROUND

WFSE began circulating irrevocable dues deduction authorization cards in July 2017, Devereaux Decl., ¶¶ 6-8, most assuredly in anticipation of a decision in *Janus v. AFSCME, Council 31* striking down agency fees as unconstitutional. 138 S. Ct. 2448 (2018). For years, WFSE relied on illegal agency fees to provide it with "financial security" and leveraged the compulsory fees by depriving nonmember employees of benefits, including the right to vote on employment conditions, to get them to "voluntarily" become members. WFSE leveraged this ability to get employees to commit to ongoing union payments ahead of *Janus*.

The language of the irrevocable cards would lead a reasonable person to believe signing was required to be or remain a member. Devereaux Decl., Exs. H-N (Dkt. 34-1) ("YES! I want to be a union member..."; "Payroll deduction authorization" (even though Plaintiffs already authorized deductions); "Maintenance of dues card" (implying signature necessary to maintain deductions going forward). Yet, Plaintiffs received no consideration for signing the irrevocable cards because they were already members receiving WFSE benefits. Defs.' Resp., 16 (Dkt. 34) ("Plaintiffs were already union members when they signed the new membership cards...").[2] The cards deceptively imply that union membership, and thus the enjoyment of its benefits, depends

---

[1] At the TRO stage, Plaintiffs were unable to respond to Defendant's claim that escrowing Plaintiffs' money alleviated the irreparable harm necessary for preliminary injunctive relief. *See* LCR 65(b)(5) ("…no reply will be permitted."). Plaintiffs believe a full briefing schedule will assist the Court in considering these important matters.

[2] WFSE states, "By becoming union members, Plaintiffs received access to benefits not available to nonmembers," implying Plaintiffs received benefits for signing the irrevocable cards. Devereaux Decl., ¶ 10 (Dkt. 34-1). But Plaintiffs became "members" when they signed the original dues checkoff authorization. Defs.' Resp., 16 (Dkt. 34).

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION** 2
**NO. 3:18-CV-5620**

FREEDOM FOUNDATION
Legal@FreedomFoundation.com
360.956.3482 | FreedomFoundation.com
WA | PO Box 552, Olympia, WA 98507
OR | PO Box 18146, Salem, OR 97305

upon signing the card. That the irrevocable card states it is a "voluntary authorization" and not required "as a condition of employment" means little because becoming a union member upon employment was also "voluntary" and not a condition of employment. Yet "voluntarily" declining union membership at that time subjected employees to an agency fee and a deprivation of benefits. WFSE's use of the term "voluntary" in the card thus does not indicate to members that they could decline to sign and still receive membership benefits. Noticeably absent from WFSE's cards is any language informing members that they would continue to receive membership benefits even if they did not sign what, for all intents and purposes, appears to be a union membership card.[3] *See supra*.

WFSE is a sophisticated multi-million-dollar organization that knew of the challenges to the agency fees *Abood v. Detroit Board of Education* illegally permitted. 431 U.S. 209 (1977). In fact, WFSE's affiliate, AFSCME, Council 31, was the defendant in *Janus v. AFSCME, Council 31*. WFSE's campaign to collect signatures on irrevocable dues deduction authorization cards followed shortly after the Seventh Circuit's decision in *Janus v. AFSCME, Council 31* on March 21, 2017 (No. 16-3638) and Janus' application for Supreme Court review shortly thereafter. Knowing that its ability to leverage agency fees to induce employees to become union members could soon end, WFSE began soliciting signatures on irrevocable dues deduction authorization cards to ensure a continued revenue stream despite anticipated resignations after *Janus*.

To do so, WFSE engineered dues irrevocability cards which closely resemble membership cards, used "voluntary" language which could be appealed to in court later but meant very little to employees at the time, and made no mention of the upcoming court case that would likely end agency fees. Instead of including language in the irrevocable dues deduction authorization cards describing what signers would likely give up, WFSE instead chose to leave employees in the dark

---

[3] Defendant's even call them "new membership cards" (even though signing them did not confer membership on Plaintiffs). Defs.' Resp. 16 (Dkt. 34). It's even likely WFSE currently uses the revocable cards as membership cards.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR A PRELIMINARY INJUNCTION    3
NO. 3:18-CV-5620

Legal@FreedomFoundation.com
360.956.3482 | FreedomFoundation.com
WA | PO Box 552, Olympia, WA 98507
OR | PO Box 18146 Salem, OR 97305

and induce signatures from people who had no reason to believe the agency fee which prompted their previous signature would go away anytime soon. The fact that Plaintiffs received nothing in return for their signatures makes the suspect nature of WFSE's scheme even more apparent.

### III. ARGUMENT

**A. Plaintiffs will continue to suffer irreparable harm in the absence of preliminary injunctive relief.**

Defendants' deduction of union payments from Plaintiffs' wages causes irreparable harm that cannot be remedied by escrowing Plaintiffs' money. Plaintiffs showed in their Motion for a Preliminary Injunction ("PI Mot.") that courts, including the Ninth Circuit, distinguish between challenges to constitutionally insufficient procedures governing the deduction of union fees, as compared to challenges to the propriety of a union's agency fee calculation. *See* PI Mot., 19-23 (Dkt. 33). Insufficient procedures cannot be remedied by an escrow. The cases Defendants cite in their Response to Plaintiffs' PI Motion ("Defs.' Resp.") actually *support* Plaintiffs' position.

For example, the Ninth Circuit in *Grunwald v. San Bernardino City Unified School District* acknowledged the distinction. In *Grunwald*, plaintiff employees challenged the union's procedures governing fee deductions. *Id*. at 1373. The plaintiffs claimed the deductions were unlawful because they were made pursuant to procedures which failed to satisfy the First Amendment's requirements. *Id*. The union escrowed all the plaintiffs' money instead of reducing the fees in advance by the amounts unquestionably dedicated to ideological expenses. *Id*. at 1374 n. 2. The court held that a reduction was unnecessary and that the escrow protected employees' First Amendment rights pending the outcome of a challenge to the propriety of the union's agency fee calculation. *Id*. at 1374-75.

*But*, the court also considered the possibility of an *additional* constitutional harm suffered by Plaintiffs when the procedure governing fee deductions does not adequately protect employees'

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR A PRELIMINARY INJUNCTION      4
NO. 3:18-CV-5620

FREEDOM FOUNDATION
Legal@FreedomFoundation.com
360.956.3482 | FreedomFoundation.com
WA | PO Box 552, Olympia, WA 98507
OR | PO Box 18146 Salem, OR 97305

First Amendment rights, observing that employees' First Amendment rights could *still* be infringed "even if nonmembers money can't be used by the union for nonrepresentational purposes..." because it has been placed in escrow. *Id*. at 1375. In other words, *even with the funds in escrow*, the employees' First Amendment rights could *still* be violated if the procedure governing the deductions fell short of constitutional requirements. *Id*. at 1375-77. The court then discussed the constitutional requirements and held that the procedure passed constitutional muster. *Id*. at 1377.[4]

As acknowledged by the Ninth Circuit in *Grunwald*, even placing 100% of the funds in escrow does not prevent constitutional harm if the deductions are not constitutional in the first place. This is precisely the argument Plaintiffs make here because the union deductions at issue were made without their proper voluntary and knowing consent, as required by *Janus*. The irreparable harm suffered by the plaintiffs in *Grunwald*, and the rest of Plaintiffs' cited cases, which justified injunctive relief is identical in nature to the irreparable harm Plaintiffs suffer here.

By alleging Defendants deduct union fees from Plaintiffs' wages absent the required knowing and voluntary waiver, Plaintiffs allege Defendants violated what the Ninth Circuit in *Grunwald* referred to as "the procedural First Amendment right," *id*. at 1375—which is reflected in *Janus*. 138 S. Ct. at 2486 ("This *procedure* violates the First Amendment…") (emphasis added). The Supreme Court in *Janus* was referring to the Illinois employer's procedure which resulted in union fee deductions without a valid constitutional waiver—just as the Defendants' procedures do here. Thus, this Court can only allow an escrow if it rules that Plaintiffs are not likely to succeed

---

[4] The court in *Grunwald* did not discuss notice only because the employees did not appeal the district court's decision that the union's procedure included the proper notice. *Id*. ("We do not address the adequacy of the notice provided by the union. The district court found that the information gave plaintiffs adequate notice, Order Re Preliminary Injunction, ER at Tab 10, at 2, and plaintiffs do not challenge that finding on appeal.") Had the district court found otherwise, it would have granted a preliminary injunction preventing the deductions.

on the merits of their challenge. However, if Plaintiffs are likely to succeed on the merits of their claim, escrowing Plaintiffs' money is insufficient to relieve the irreparable constitutional harm.

*Wagenblast v. Inslee*, No. C15-5407 BHS, 2015 WL 8328805, at *3 (W.D. Wash. Dec. 9, 2015), cited by Defendants, Defs.' Resp., 5-6 (Dkt. 34), also acknowledges the standard Plaintiffs argue here, citing *Prescott v. Cty. of El Dorado*, 177 F.3d 1102 (9th Cir. 1999) *cert. granted*, *judgment vacated*, 528 U.S. 1111 (2000), *and opinion reinstated in part*, 204 F.3d 984 (9th Cir. 2000). Judge Benjamin Settle stated in *Wagenblast*, "the district court [in *Prescott*][5] entered a preliminary injunction prohibiting the collection of fees until the procedures were corrected and then made the injunction permanent." 2015 WL 8328805, at *3.

None of Defendants' cited cases provide otherwise and, in fact, support Plaintiffs' argument: *Price v. Int'l Union, United Auto. Workers*, 927 F.2d 88, 92, 94-95 (2nd Cir. 1991) (finding that the union's procedures were not "arbitrary, discriminatory, or implemented in bad faith," that the heavy burden imposed by the First Amendment did not apply, and that there was no constitutional harm because there was no state action—leaving only monetary harm); *Gibson v. Florida Bar,* 906 F.2d 624, 632-33 (11th Cir. 1990), *cert. dismissed,* 502 U.S. 104 (1991) (holding that the Florida Bar's procedures pass constitutional muster); *Crawford v. Air Line Pilots Ass'n Int'l,* 870 F.2d 155, 161 (4th Cir. 1989) (holding the union's deduction procedures to be constitutionally adequate); *Hohe v. Casey,* 868 F.2d 69, 72 (3rd Cir. 1989) (see Plaintiffs' discussion of *Hohe* in their PI Mot. at 20 (Dkt. 33)); *Andrews v. Education Ass'n of Cheshire,* 829 F.2d 335, 341 (2nd Cir. 1987) (upholding portion of union's procedures that satisfy constitutional requirements **but enjoining procedures that failed to satisfy constitutional requirements even though the union had placed the funds in escrow**).

---

[5] Plaintiff cited the district court decision in *Prescott* in their preliminary injunction motion at 23 (Dkt. 33).

FREEDOM FOUNDATION
Legal@FreedomFoundation.com
360.956.3482 | FreedomFoundation.com
WA | PO Box 552, Olympia, WA 98507
OR | PO Box 18146 Salem, OR 97305

Thus, contrary to Defendant's claim otherwise, Defs., Resp., 7 (Dkt. 34), *Lowary v. Lexington Local Board of Education*, 854 F.2d 131 (6th Cir. 1988) is entirely consistent with Ninth Circuit precedent. Further, Defendants attempts to distinguish *Lowary* are unpersuasive because, at the time Plaintiffs signed the irrevocable dues deduction authorization cards, Plaintiffs *were* suffering under "the burden on First Amendment rights necessarily created by government-compelled payments," Defs.' Resp., 7, by virtue of the CBA's illegal agency fee requirement threatening an unconstitutional penalty.[6]

**B. Plaintiffs are likely to succeed on the merits of their claims.**

*1. Janus applies to Plaintiffs and the terms of WFSE's irrevocable cards are not "legal and lawful responsibilities freely undertaken."*

Defendants claim "the First Amendment is not a license for a party to an otherwise valid contract to renege on her promises" and that "the Constitution says nothing affirmative about reneging legal and lawful responsibilities freely undertaken." Defs.' Resp., 12-13 (citing *Cohen v. Cowles Media Co.*, 501 U.S. 663, 672 (1991) and *Fisk v. Inslee*, 2017 WL 4619223, at *1-2 (W.D. Wash Nov. 28, 2017). First, *Cohen* does not apply for the reasons stated in Plaintiff's PI Mot. at 11-14 (Dkt. 33). A purported waiver not voluntarily and knowingly executed cannot impose "legal and lawful responsibilities freely undertaken."[7]

---

[6] Additionally, Defendants' observation that there were individuals in *Cummings v. Connell* (who might have been plaintiffs) for whom their fees were put in escrow it is irrelevant because, as the court observed, "the individuals to whom defendants refer objected to the fees and entered arbitration proceedings." 1999 WL 1256772, at *10 n. 9 (E.D. Cal. Dec. 20, 1999); *see Defs.*' Resp., 6 n. 3. Thus, the court was referring to individuals who were challenging the propriety of the union's calculation of its agency fee, not the procedures governing the deductions. Also, the court later held that an escrow was sufficient because, unlike previously, at the time of the subsequent decision, "[i]n the present situation…the Court has not found that CSEA's collection procedures are likely to violate *Hudson*." *Cummings v. Connell*, No. CIVS-99-2176WBS DAD, 2000 WL 33599092, at *7 n. 12 (E.D. Cal. Feb. 28, 2000).

Similarly, Defendants' observation that the union in Prescott v. County of El Dorado was only escrowing 2% to 4% of the disputed fee (instead of 100%), Defs.' Resp., 6-7 n. 3 is also irrelevant because the court explicitly held that it was not issuing the injunction based on an argument that the escrow was less than 100% of the total fees. 915 F. Supp. 1080, 1091 (E.D. Cal. 1996).

[7] The plaintiffs in *Fisk* were "partial public employees," 2017 WL 4619223, at *1-2 (W.D. Wash Nov. 28, 2017), under *Harris v. Quinn*, 134 S. Ct. 2618 (2014) (prohibiting agency fees), and signed cards *without the threat of agency*

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR A PRELIMINARY INJUNCTION
NO. 3:18-CV-5620

7

FREEDOM FOUNDATION
Legal@FreedomFoundation.com
360.956.3482 | FreedomFoundation.com
WA | PO Box 552, Olympia, WA 98507
OR | PO Box 18146, Salem, OR 97305

Defendants argue that the union deductions from Plaintiffs' wages result from their "purely voluntary decision to affirmatively enter into private contractual agreements" and that *Janus* does not address such agreements. Defs.' Resp., 15. Defendants argued in their Response to Plaintiffs' TRO motion that *Janus* only applied to employees who have affirmatively declined union membership. Defs' Resp. to TRO Mot., 10. (Dkt. #10). Defendants maintain the same essential argument but now use inverse language; namely, that *Janus* only applies to "individuals who have not affirmatively chosen to join the union and have not affirmatively chosen to enter into a contract to secure member benefits in exchange for paying dues." Defs.' Resp., 15.

Defendants continue to ignore the fact that *Plaintiffs fit this description* before they signed dues checkoff authorizations after becoming employed. In fact, *every newly hired employee fits this description* unless and until they sign a dues deduction authorization. *See* PI Motion, 7-9 (Dkt. 33). No matter how presented, relying on a form that fails to constitute a valid constitutional waiver to justify union payments, *whether the original dues checkoff authorization or irrevocable dues authorizations*, requires Defendants to presume employees waived their constitutional right to not make union payments. Such a presumption violates *Janus*. 138 S. Ct. 2486.[8]

Defendants limit *Janus'* waiver requirement to only prohibit opt-out schemes that require the payment of union fees without *any* kind of consent. Defs', Resp., 15. To be sure, *Janus* prohibits such schemes. But *Janus* does more. The Supreme Court in *Janus* struck down a law mandating union deductions from an employee's wages absent his or her consent. The Court then

---

*fees—an unconstitutional penalty*. *See* Defendant SEIU 775 Response to Notice of Supplemental Authority, 1-2 ("When these plaintiffs signed their membership agreements, there was no government requirement that they pay fair-share fees as a condition of employment."). Abernathy Decl. in Support of Reply, Ex. A. (Nor did the court in *Fisk* discuss constitutional waiver.)

[8] *Janus* does not apply to dues irrevocability agreements authorized by Congress in the private sector. *See* Defs.' Resp., 9-10. Agency fees thus do not constitute an unconstitutional penalty. Similarly, agency fees in federal employment have always been illegal and federal employees are not penalized with an agency fee when declining union membership.

described exactly what kind of consent *is necessary*; namely, consent that is "freely given" and shown by "clear and compelling evidence" to be a valid waiver of constitutional rights. *Id*.

   *2. Plaintiffs' did not voluntarily sign WFSE's irrevocable cards.*

Though plaintiffs argue their consent was not "freely given," as required by *Janus*, in the *constitutional waiver context*, 138 S. Ct. at 2486, Defendants claim that plaintiffs did not sign the cards under the common law principle of "duress." Defs.' Resp., 16. In Washington, the assertion of duress "must be proven by evidence that the duress resulted from the other's wrongful or oppressive conduct." *Retail Clerks Health & Welfare Tr. Funds v. Shopland Supermarket, Inc.*, 96 Wn.2d 939, 944, 640 P.2d 1051, 1054 (1982); *see also Paris v. Wells Fargo Financial, Inc.*, 2012 WL 604356, \*3 (W.D. Wash. Feb. 23, 2012). Defendants' wrongful conduct was illegally penalizing Plaintiffs for declining union membership, i.e. imposing an agency fee and still depriving benefits. Requiring an agency fee in lieu of union membership is, and was,[9] unlawful. Defendants deprived Plaintiffs of the freedom to either become union members or decline union membership without an unlawful penalty. *See Id*. (plaintiff was "deprived of his free will at the time he entered into the challenged agreement in order to sustain a claim of duress.").

Returning to the constitutional context, Defendants cite *Fuentes v. Shevin*, 407 U.S. 67 (1972), to argue WFSE's cards were "clear." Defs.' Resp., 19. Defendants cite language in the card relating to the voluntariness of Plaintiffs' signatures. *Id*. First, such language does not indicate that Plaintiffs' signatures were voluntary. *See* § II above (entitled "Background"). The issue in *Fuentes* was not whether the person voluntarily signed the conditional sales contract, but whether the conditional sales contract properly referenced the right that was being waived. *Id*. at 95-96.

---

[9] "When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule." *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97 (1993).

Nothing plaintiffs signed say anything about their right to decline union membership without unlawful penalty and the irrevocable cards do not acknowledge plaintiffs could have declined to sign and continued enjoying member benefits. Devereaux Decl., Exs. A-N (Dkt. 34-1).

> 3. *Janus invalidates WFSE's dues irrevocability cards even though they were signed pre-Janus.*

*Coltec v. Hobgood*, 280 F.3d 262 (3rd Cir. 2002), *Brady v. United States*, 397 U.S. 742 (1970), and *Dingle v. Stevenson*, 840 F.3d 171 (4th Cir. 2016), cited by Defs.' Resp., 18-19, are inapposite for at least three reasons. First, unlike here, the plaintiffs in *Brady* and *Dingle*, as in *Coltec*, sought relief from fully executed court decisions pursuant to 28 U.S.C. § 2255 (or § 2254). As with Civ. R. 60 in *Coltec*, § 2255 "is an extraordinary remedy in light of society's legitimate interest in the finality of judgments." *U.S. v. Palmer*, 902 F. Supp. 2d 1, 10 (D.C. 2012). *See also U.S. v. Pollard*, 959 F.2d 1011, 1020 (D.C. Cir. 1992). Plaintiffs here do not seek relief from a final court judgment and need not meet that burden.[10] Further, *Defendants* have the burden here.

Second, in none of the cases cited by Defendant did the court find the plaintiff was denied a constitutional right without a proper constitutional waiver. *See Dingle*, *supra* (no discussion of the denial of the Sixth Amendment right to trial by jury without a waiver); *Coltec*, *supra* (no finding that a party was denied due process or suffered an unconstitutional taking absent a proper constitutional waiver); *Zweber*, *supra* n. 10 (no discussion of waiver); *Oliveros-Orosco*, *id.* (no discussion of waiver). In fact, the court in *Brady* specifically found that the party had waived his right to a trial by jury. *Brady*, 397 U.S. at 743-44. None of Defendants' cited cases stand for the proposition that a plea agreement, or a contract of any kind, renders unassailable the denial of a constitutional right without the proper waiver.

---

[10] *United States v. Zweber*, 913 F.2d 705, 706-07 (9th Cir. 1990) and *United States v. Oliveros-Orosco*, 942 F.2d 644, 645-46 (9th Cir. 1991) also involved final executed judgments.

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION
NO. 3:18-CV-5620**

10

FREEDOM FOUNDATION
Legal@FreedomFoundation.com
360.956.3482 | FreedomFoundation.com
WA | PO Box 552, Olympia, WA 98507
OR | PO Box 18146 Salem, OR 97305

Third, unlike the plaintiffs in Defendants' cited cases, Plaintiffs here were denied substantive constitutional rights. In *Dingle*, the court explained that *Roper v. Simmons*, 543 U.S. 551 (2005) "made clear that its holding should be construed to apply only to the sentence actually at issue in that case, which was capital punishment." *Dingle*, 840 F.3d at 174. The court concluded that "Dingle seeks to extrapolate from the distinct constitutional right recognized in *Roper* to a much broader substantive rule that extends to plea agreements negotiated in the shadow of the death penalty." *Id*. Here, Plaintiffs possess the constitutional right to be free from union payments without the threat of an unconstitutional penalty of agency fees. 138 S. Ct. at 2486. Defendants denied Plaintiffs this right. There is no indication in Defendants' cited cases that those plaintiffs were denied a constitutional right without the proper waiver.[11]

*4. The existence of a bilateral contract is irrelevant.*

First, the presence of bilateral contracts, *see* Defs.' Resp., 20 (Dkt. 34), is obviously irrelevant because the Supreme Court acknowledged that *Janus* would invalidate bilateral contracts. 138 S. Ct. at 2484 ("it would be unconscionable to permit free speech rights to be abridged in perpetuity in order to preserve contract provisions that will expire on their own in a few years' time"). The same principle applies to WFSE's irrevocable cards (which last a year and automatically renew.) Devereaux Decl., Exs. H-N (Dkt. 34-1).

Similarly, it is irrelevant if *some* of Plaintiffs' cases do not involve bilateral contracts. Plaintiffs cite *Johnson v. Zerbst*, 304 U.S. 548 (1938), *Miranda v. Arizona*, 384 U.S. 436 (1966), *Edwards v. Arizona*, 451 U.S. 477 (1981), *D.H. Overmyer Co., Inc. of Ohio v. Frick Co.*, 405 U.S. 174 (1972) and *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666 (1999) to illustrate the standard for determining what constitutes a valid

---

[11] Had the plea agreements in those cases resulted from, for example, a denial of the Sixth Amendment right to a trial by jury without a proper waiver, those plea agreements would have been overturned.

constitutional waiver, not because those cases are factually identical. The Supreme Court in *Janus* specifically cited *Zerbst*, *College Savings Bank*, *Knox* and *Curtis Publishing Co*. when it held that employees waive their First Amendment rights by agreeing to make union payments and that the waiver must be freely given and shown by clear and compelling evidence. *Janus*, 138 S. Ct. 2486. These cases illustrate that "clear and compelling evidence" must include evidence of a voluntary, knowing, and intelligent waiver.[12]

Most importantly, the Ninth Circuit explicitly adopted the constitutional waiver requirement in the First Amendment context and applies it in cases with bilateral contracts. *See Leonard v. Clark*, 12 F.3d 885, 889-90 (1993) ("The Supreme Court has held that First Amendment rights may be waived upon clear and convincing evidence that the waiver is knowing, voluntary and intelligent… We adopted this standard in *Davies v. Grossmont Union High School District*, 930 F.2d 1390, 1394 (9th Cir. 1991).").[13] In both *Davies* and *Clark*, the parties entered into bilateral contracts which purportedly waived a party's constitutional right, but in neither case was the existence of a bilateral contract relevant to the validity of the purported waiver. *See supra*. In *Davies*, the Ninth Circuit stated waiver is possible "if it can be established by clear and convincing evidence that the waiver is voluntary, knowing and intelligent." *Id*. The court engaged in the relevant analysis without mentioning anything about the existence of a bilateral contract. *Id*. at 1394-95. Similarly, the Ninth Circuit in *Leonard* engaged in the necessary constitutional analysis and the existence of a bilateral contract (a CBA) was irrelevant. 12 F.3d at 889-90.

---

[12] *Brady*, *Dingle*, and *Coltec*, *see supra*, do not stand for the proposition that a bilateral contract somehow renders unassailable the denial of a constitutional right without the proper waiver. Moreover, Plaintiffs receive no consideration in return for signing the dues irrevocability cards, as did the plaintiffs in each of the cited cases.

[13] Additionally, *Fuentes* invalidated a bilateral contract. 407 U.S. at 95-96.

FREEDOM FOUNDATION
Legal@FreedomFoundation.com
360.956.3482 | FreedomFoundation.com
WA | PO Box 552, Olympia, WA 98507
OR | PO Box 18146 Salem, OR 97305

| | |
|---|---|
| 1 | *5. Plaintiffs' standard does not violate the First Amendment.* |
| 2 | Defendants misconstrue Plaintiff's argument. Defs.' Resp., 21-22. Plaintiffs do not argue |
| 3 | that "special rules" should be applied because WFSE is a union that engages in political speech. |
| 4 | Plaintiffs' argument *harmonizes* with the Supreme Court's and Ninth Circuit's jurisprudence on |
| 5 | constitutional waivers. Defendants must provide clear and compelling evidence of a valid |
| 6 | constitutional waiver not because WFSE engages in political speech, but because *Plaintiffs* have a |
| 7 | constitutional right to not be subjected by the State to compelled payments to a private |
| 8 | organization. *Janus*, *supra*.[14] To prove Plaintiffs' payments are not compelled, Defendants must |
| 9 | show the payments are the result of freely given waivers for which there is clear and compelling |
| 10 | evidence. 138 S. Ct. at 2486. Plaintiffs' cases show Defendants cannot satisfy that burden.[15] |

**CONCLUSION**

Plaintiffs respectfully request that this Court issue a preliminary injunction enjoining the continued deduction of union fees from their wages.[16]

DATED this 5th day of October 2018.

By: s/James G. Abernathy
James G. Abernathy, WSBA #48801
c/o Freedom Foundation
P.O. Box 552 Olympia, WA 98507
p. 360.956.3482 f. 360.352.1874
jabernathy@freedomfoundation.com

---

[14] The Supreme Court in *Janus* found that public sector collective bargaining is inherently political speech in the context of holding that agency fees significantly infringe employees' First Amendment rights and there is no compelling state interest which justifies the infringement. Further, protection of Plaintiffs' free speech rights may be necessary because exclusive representation "substantially restricts" Plaintiffs' rights, "confers many benefits on unions," and "results in a tremendous increase in the power" of the union. *Janus*, 138 S. Ct. at 2460 and 2467. Agency fees at the time Plaintiffs signed the cards also infringed their free speech rights. *Hudson*, 475 U.S. at 301.

[15] Further, the reason Plaintiffs mentioned *Miranda* and *Edwards* was to counter Defendants' argument that *Janus* only applied to employees who first affirmatively declined union membership.

[16] Plaintiffs rely on their arguments in their PI Motion at 24-25 regarding the public interest and balancing the equities. Plaintiffs especially note all the cases in which the court enjoined deductions (with respect to the public interest and balancing the equities). PI Motion, 20 n. 18 (Dkt. 33).

FREEDOM FOUNDATION
Legal@FreedomFoundation.com
360.956.3482 | FreedomFoundation.com
WA | PO Box 552, Olympia, WA 98507
OR | PO Box 18146 Salem, OR 97305

**CERTIFICATE OF SERVICE**

I hereby certify that on October 5, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel/parties of record. I hereby certify that no other parties are to receive notice.

Dated: October 5, 2018

By: s/James G. Abernathy
James G. Abernathy, WSBA #48801
c/o Freedom Foundation
P.O. Box 552 Olympia, WA 98507
p. 360.956.3482 f. 360.352.1874
jabernathy@freedomfoundation.com

