# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| MELISSA BELGAU, DONNA BYBEE, RICHARD OSTRANDER, KATHRINE NEWMAN, MIRIAN TORRES, GARY HONC, and MICHAEL STONE,<br><br>Plaintiffs,<br><br>v.<br><br>JAY INSLEE, in his official capacity as governor of the State of Washington, DAVID SCHUMACHER, in his official capacity as Director of the Washington Office of Financial Management, JOHN WEISMAN, in his official capacity as Director of the Washington Department of Health, CHERYL STRANGE, in her official capacity as Director of the Washington Department of Social and Health Services, ROGER MILLAR, in his official capacity as Director of the Washington Department of Transportation, JOEL SACKS, in his official capacity as Director of the Washington Department of Labor and Industries, and WASHINGTON FEDERATION OF STATE EMPLOYEES (AFSCME, COUNSEL 28) a labor corporation,<br><br>Defendants. | CASE NO. 18-5620 RJB<br><br>ORDER DENYING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION |

THIS MATTER comes before the Court on the Plaintiffs' Motion for Preliminary Injunction. Dkt. 33. The Court has considered the pleadings filed regarding the motion and the remaining file.

Plaintiffs, who are Washington State employees, filed this putative class action on August 2, 2018, asserting that the Defendants are violating their first amendment rights by continuing to deduct union dues/fees from their wages even "after the U.S. Supreme Court issued *Janus v. AFSCME, Council 31*, on June 27, 2018, despite the fact that Plaintiffs have not clearly and affirmatively consented to the deductions by waiving the constitutional right to not fund union advocacy." Dkt. 1 (*citing Janus v. AFSCME, Council 31*, 138 S.Ct. 2448 (2018)).

Plaintiffs now move for a preliminary injunction for an order enjoining the continued deduction of union fees from their wages. Dkt. 33. Defendants respond and oppose the motion (Dkt. 34) and Plaintiffs filed a reply (Dkt. 35).

For the reasons provided below, the Plaintiff's Motion for a Preliminary Injunction (Dkt. 33) should be denied. Plaintiffs have failed to demonstrate a likelihood of success on the merits or that there are serious questions going to the merits, failed to show a likelihood of irreparable harm, and failed to demonstrate that the balance of equities and the public interest favor a preliminary injunction.

## I. FACTS AND PROCEDURAL HISTORY

### A. BACKGROUND FACTS

The State of Washington and the Washington Federation of State Employees AFSCME Council 28 ("Union") entered an exclusive collective bargaining agreement for the years 2017-2019 ("CBA"). Dkt. 1. On June 27, 2018, the United States Supreme Court decided *Janus v. AFSCME, Council 31*. 138 S. Ct. 2448, 2486 (2018). The Plaintiffs allege that the State and the

Union entered into a Memorandum of Understanding on July 6, 2018, and amended the CBA to stop collection of compulsory agency fees for non-union members. Dkt. 1 (*citing* the CBA found at https://ofm.wa.gov/sites/default/files/public/legacy/labor/agreements/17-19/wfse_gg.pdf). As amended in July of 2018, § 40.2 of the CBA provides:

> The Employer agrees to deduct an amount equal to the membership dues from the salary of employees who request such deduction in writing within thirty (30) days of receipt of a properly completed request submitted to the appropriate agency payroll office. Such requests will be made on a Union payroll deduction authorization card. The Employer will honor the terms and conditions of each employee's signed membership card.

*Id.* Under § 40.3, the CBA states that "upon receipt of the employee's written authorization, the Employer [the State of Washington here] will deduct from the employee's salary an amount equal to the dues required to be a member of the Union." *Id.* In § 40.6, the CBA further provides that "[a]n employee may revoke his or her authorization for payroll deduction of payments to the Union by written notice to the Employer and the Union in accordance with the terms and conditions of their signed membership card." *Id.*

Moreover, the State is obligated by statute to enforce the CBA by "deducting from the payments to bargaining unit members the dues required for membership in the [Union]." RCW § 41.80.100.

The Union represents more than 40,000 Washington State employees; over 36,000 are dues paying members. Dkt. 34-1, at 2. Each of the seven Plaintiffs became Union members before July 2017. Dkt. 34-1, at 8-26.

In July 2017, the Union decided to begin using a new membership agreement which included a one-year dues payment commitment. Dkt. 34-1, at 3. Members of the Union were not required to sign the new membership agreement. Dkt. 34-1, at 3. The new membership

agreement, entitled "Payroll Deduction Authorization & Maintenance of Membership Card," provided, in part:

> Yes! I stand united with my fellow State employees . . . 100% Union . . .
>
> Yes! I want to be a union member. . .
>
> Effective immediately, I hereby voluntarily authorize and direct my Employer to deduct from my pay each period, the amount of dues as set in accordance with the [Union] Constitution and By-Laws and authorize my Employer to remit such amount semi-monthly to the Union (currently 1.5% of my salary per pay period not to exceed the maximum). This voluntary authorization and assignment shall be irrevocable for a period of one year from the date of execution or until the termination date of the collective bargaining agreement (if there is one) between the Employer and the Union, whichever occurs sooner, and for year to year thereafter unless I give the Employer and the Union written notice of revocation not less than ten (10) days and not more than twenty (20) days before the end of any yearly period, regardless of whether I am or remain a member of the Union, unless I am no longer in active pay status in a [Union] bargaining unit; provided however, if the applicable collective-bargaining agreement specifies a longer or different revocation period, then only that period shall apply. This card supersedes any prior check-off authorization card I signed. I recognize that my authorization of dues deductions, and the continuation of such authorization from one year to the next, is voluntary and not a condition of my employment.

Dkt. 34-1, at 28, 30, 32, 34, 37, 39 and 42. Each of the Plaintiffs signed the new membership agreement: Plaintiff Belgau on November 2, 2017; Plaintiff Ostrander on November 2, 2018; Plaintiff Bybee on November 7, 2017; Plaintiff Stone on March 6, 2018; Plaintiff Newman on March 21, 2018; Plaintiff Honc on April 14, 2018; and Plaintiff Torres on April 16, 2018. *Id*. Each were afforded the opportunity to opt-out of Union membership, but did not choose to do so. *Id*.

The Union asserts that by having year-long commitments from members it is able to financially plan for benefits and budget for staff, facilities, and other expenses. Dkt. 34-1, at 3. The Union offers certain benefits exclusively to its members including: the right to vote for Union officers, run for office, participate in Union internal affairs, discounts on home mortgages,

mobile phone plans and other goods and services, access to scholarship programs, access to legal advice, dental benefits, disaster/hardship relief grants, and social events. Dkt. 34-1, at 4 and 44-45.

After the June 27, 2018 *Janus* decision, each of the Plaintiffs notified the Union and the State that they no longer wanted to be Union members. Dkts. 33-3 – 3-7. The State has continued to deduct dues from their pay checks. *Id*.

The Union states that it "will instruct the State to end dues deductions for each Plaintiff on [the one year anniversary of the signing of their membership agreement], regardless of whether or not the Plaintiff[s] make[] another request to end the deductions." Dkt. 34-1, at 5. It also indicates that "[o]n August 14, 2018, [the Union] deposited into a separate interest-bearing escrow account all dues that [the Union] had received as of that date from each Plaintiff after the date of each Plaintiff's request to resign from Union membership," and will continue to do so until the Plaintiffs' dues deductions end on the one year anniversary of Plaintiffs' signing of their membership cards. Dkt. 34-1, at 5. The Union further states that it will keep these dues in a separate interest bearing escrow account until this case is resolved, and will not use the dues to pay for any union activities. Dkt. 34-1, at 5.

**B. PROCEDURAL HISTORY**

On August 2, 2018, the Plaintiffs filed this putative class action (1) challenging the constitutionality of RCW 41.80.100 and the CBA provisions related to the deduction of membership fees, as a violation of their First Amendment rights, (2) asserting that the Defendants conspired to violate their constitutional rights, and (3) claiming that the Union was unjustly enriched. Dkt. 1. The Plaintiffs seek declaratory and injunctive relief as well as monetary damages, costs and attorneys' fees. *Id*.

The same day Plaintiffs filed their complaint, they filed a motion seeking a temporary restraining order "enjoining Defendants from deducting union dues/fees from the wages of any Washington State employee in a bargaining unit listed in Appendix A to the 2017-2019 [Collective Bargaining Agreement ("CBA")] for whom Defendants cannot provide clear and compelling evidence that he or she clearly and affirmatively consented, on or after June 27, 2018, to the deduction of union dues by waiving his or her right to not fund union advocacy, and from preventing Plaintiffs and state employees from resigning union membership." Dkt. 2, at 2.

On August 8, 2018, Plaintiffs' motion for a temporary restraining order was denied without prejudice because the Plaintiffs failed to demonstrate irreparable harm. Dkt. 11. That Order provided, in part,

> The Defendants state in their response that the union has agreed to place the Plaintiffs' dues/fees in escrow in an interest-bearing account until this lawsuit is decided. Dkt. 10-1. The Plaintiffs' money will not be used by the Union in any manner until the case is decided. *Id*. The Plaintiffs have failed to demonstrate that they are "likely to suffer irreparable harm in the absence of preliminary relief." Moreover, under Fed. R. Civ. P. 65 (c), "the court may issue a preliminary injunction only if the movant gives security in an amount that the court considers proper." Plaintiffs state that they cannot afford to post a security. Dkt. 2. The Defendants' offer to hold the money at issue in escrow provides a good resolution for Rule 65 (c)'s requirements.

Dkt. 11, at 4.

**C. PENDING MOTION**

Plaintiffs renew their motion to preliminarily enjoin the State from continuing to collect Union membership dues because they have now resigned from the Union. Dkt. 33. Plaintiffs argue that they are (1) likely to succeed on the merits because Union fee deductions from their wages violates their First Amendment rights and Defendants cannot show that they waived their rights, (2) continued dues deduction causes irreparable harm to Plaintiffs and escrowing

Plaintiffs' money is insufficient, (3) the balance of hardships tips heavily in their favor and (4) an injunction is in the public interest. *Id.*

Defendants oppose the motion, and argue that: (1) the Plaintiffs have no likelihood of success on the merits because the membership cards they signed constitute binding contracts to pay dues for one year, the First Amendment does not provide them with a right to breach their voluntary contractual obligations, *Janus* does not apply, and Plaintiffs' proposed standard would itself violate the First Amendment, (2) the Plaintiffs again fail to show irreparable harm because escrowing the money until this case is resolved is adequate, (3) the balance of equities does not favor relief, and (4) the public interest does not favor preliminary relief. Dkt. 34.

Plaintiffs reply and assert that each of the *Winter* factors demonstrate that they are entitled to preliminary relief, particularly that they will suffer irreparable harm absent relief and are likely to succeed on the merits. Dkt. 35.

## II. DISCUSSION

### A. STANDARD FOR A PRELIMINARY INJUNCTION

Plaintiffs seeking a preliminary injunction must establish one of two tests. *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017). The first test requires Plaintiffs to show: (1) that they are "likely to succeed on the merits," (2) that they are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [their] favor," and (4) "an injunction is in the public interest." *Coffman v. Queen of Valley Med. Ctr.*, 895 F.3d 717, 725 (9th Cir. 2018)(*citing Winter v. Nat. Res. Def. Council*, Inc., 555 U.S. 7 (2008) (*internal quotation marks omitted*)). Under the second variant of the 9th Circuit's test for a preliminary injunction, the "sliding scale" version of the *Winter* standard provides that "if a plaintiff can only show that there are serious questions going to the merits—a lesser showing

than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *All. for the Wild Rockies*, at 1217 (*internal quotation marks and citations omitted*).

## B. APPLICATION OF THE *WINTER* TESTS

The Plaintiffs' motion for preliminary injunction (Dkt. 33) should be denied. They have failed to make an adequate showing under either of the *Winter* tests.

1. <u>Success on the Merits or Serious Questions Going to the Merits</u>

Based on the Plaintiffs' current showing, they have failed to demonstrate a "likelihood of success on the merits" or that there are "serious questions going to the merits." They maintain that the continued deduction of dues from their paychecks violates their First Amendment rights under *Janus*. In *Janus,* the Supreme Court considered whether state employees, who were not members of a state's exclusive bargaining unit (union), could be required to pay the union "agency fee," which was supposed to represent costs associated with non-political union activity. The Court held:

> Neither an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay. By agreeing to pay, nonmembers are waiving their First Amendment rights, and such a waiver cannot be presumed. Rather, to be effective, the waiver must be freely given and shown by "clear and compelling" evidence. Unless employees clearly and affirmatively consent before any money is taken from them, this standard cannot be met.

*Janus*, at 2486 (*internal citations omitted*). The Plaintiff in *Janus* was not a union member and never agreed to be a union member.

Here, unlike in *Janus*, the Plaintiffs entered into a contract with the Union to be Union members and agreed in that contract to pay Union dues for one year. "[T]he First Amendment does not confer . . . a constitutional right to disregard promises that would otherwise be enforced

under state law." *Cohen v. Cowles Media Co.*, 501 U.S. 663, 672 (1991). A person has the right to contract away their First Amendment protections. *See Fisk v. Inslee,* 2017 WL 4619223 (W.D. Wash. Oct. 16, 2017). Plaintiffs' assertions that they didn't knowingly give up their First Amendment rights before *Janus* rings hollow. *Janus* says nothing about people join a Union, agree to pay dues, and then later change their mind about paying union dues.

In *Fisk v. Inslee,* a court in this district considered whether people who joined a union and signed an agreement to pay dues for a year (after sending a letter of objection and rescission of support for the union) were entitled to an immediate cessation of deduction of their dues. 2017 WL 4619223 (W.D. Wash. Oct. 16, 2017). In concluding that the Plaintiffs were not entitled to relief, the court held:

> The freedom to contract is rooted in the due process clause of the Fifth and Fourteenth Amendment. It is the bedrock upon which the economic engine provides the goods and services necessary for a thriving society. A worker has every right to voluntarily associate with a union in order to promote better working conditions and wages. Correspondingly, a worker can refuse to associate with or join a union. That is her prerogative. But, once she joins voluntarily, in writing, she has the obligation to perform the terms of her agreement. The freedom of speech and the freedom of association do not trump the obligations and promises voluntarily and knowingly assumed. The other party to that contract has every reason to depend on those promises for the purpose of planning and budgeting resources. The Constitution says nothing affirmative about reneging legal and lawful responsibilities freely undertaken.

*Fisk v. Inslee*, C16-5889RBL, 2017 WL 4619223, at *5 (W.D. Wash. Oct. 16, 2017). The Court finds the reasoning in *Fisk* persuasive, even though the decision came out before *Janus. Janus* does not apply to Plaintiffs' situation, as explained above. Plaintiffs' arguments to the contrary are unpersuasive.

Plaintiffs assert that they were under duress when they signed the agreements at issue here. They fail to make an adequate showing of duress, particularly for the purposes of this

motion for preliminary injunction, where the issues of duress are fact specific and discovery has only just begun.

The Plaintiffs have failed to establish that they are likely to succeed on the merits or that there are serious questions going to the merits. They have failed to meet their first burden under either the traditional *Winter* test or the "sliding scale" version of the *Winter* standard.

2. Irreparable Harm in the Absence of Preliminary Relief

The Plaintiffs have failed to show that they will suffer irreparable harm in the absence of preliminary relief. As was true a few months ago, the Union states that it has, and will continue, to escrow all dues in an interest bearing account until this litigation is resolved and will not use the dues for any Union activity. Dkt. 34-1, at 5. It further agreed to "instruct the State to end dues deductions for each Plaintiff on [the one year anniversary of the signing of their membership agreement], regardless of whether or not the Plaintiff[s] make[] another request to end the deductions." Dkt. 34-1, at 5. Further, Plaintiffs do not indicate that they can now post security. As stated in the August 8, 2018 Order Denying Plaintiffs' Motion for TRO:

> The Plaintiffs' money will not be used by the Union in any manner until the case is decided. The Plaintiffs have failed to demonstrate that they are "likely to suffer irreparable harm in the absence of preliminary relief." Moreover, under Fed. R. Civ. P. 65 (c), "the court may issue a preliminary injunction only if the movant gives security in an amount that the court considers proper." Plaintiffs state that they cannot afford to post a security. The Defendants' offer to hold the money at issue in escrow provides a good resolution for Rule 65 (c)'s requirements.

Dkt. 11, at 4. The reasoning from the August 8, 2018 Order remains valid. Plaintiffs have failed to demonstrate irreparable harm.

3. Balance of Equities and the Public Interest

Plaintiffs also fail to show that the balance of equities favors a preliminary injunction. The Plaintiffs agreed to have dues retained from their paychecks for one year. The State

ORDER DENYING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION - 10

properly points out that by escrowing the disputed funds, the status quo is maintained. If the deductions were halted, then the Union would likely not see the funds, particularly where the Plaintiffs state that they do not have the funds to post a security. The balance of equities do not favor an injunction at this time.

Further, Plaintiffs fail to show that the public interest favors preliminary relief. The public has a strong interest in the enforcement of contracts. *See Steele v. Drummond*, 275 U.S. 199, 205 (1927)("it is a matter of great public concern that freedom of contract be not lightly interfered with").

4. Conclusion

Plaintiffs' Motion for a Temporary Restraining Order (Dkt. 33) should be denied. The Plaintiffs have failed to demonstrate a likelihood of success on the merits or that there are serious questions going to the merits, failed to show a likelihood of irreparable harm, and failed to demonstrate that the balance of equities and the public interest favor a preliminary injunction.

### III. ORDER

It is **ORDERED** that:

- Plaintiffs' Motion for Preliminary Injunction (Dkt. 33) **IS DENIED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 11th day of October, 2018.

ROBERT J. BRYAN
United States District Judge