1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Honorable Robert J. Bryan

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MELISSA BELGAU, et al.,

                          Plaintiffs,

        vs.

GOVERNOR JAY INSLEE, et al.,

                        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

No.    3:18-cv-05620-RJB

**DEFENDANT WFSE'S MOTION FOR
SUMMARY JUDGMENT**

NOTE ON MOTION CALENDAR:
February 8, 2019

ORAL ARGUMENT REQUESTED

DEFENDANT WFSE'S MOTION FOR SUMMARY JUDGMENT
(18-cv-05620)

YOUNGLOVE & COKER, P.L.L.C.
WESTHILLS II OFFICE PARK
1800 COOPER POINT RD SW, BLDG 16
PO BOX 7846
OLYMPIA, WASHINGTON 98507-7846
(360) 357-7791

## **TABLE OF CONTENTS**

I.     TABLE OF AUTHORITIES ..................................................................ii

II.    INTRODUCTION ..............................................................................1

III.   BACKGROUND ................................................................................2

IV.   ARGUMENT....................................................................................6

    A.  Washington law and the collective bargaining agreement simply provide for the state employer to honor voluntary contractual obligations........................................................6

    B.  WFSE's voluntary membership agreements constitute binding contracts ................... 8

    C.  The First Amendment does not provide Plaintiffs with a right to breach their voluntary contractual obligations.............................................................. 10

    D.  *Janus* does not change the governing legal analysis here.......................................... 13

        1.  *Janus* does not address voluntary, affirmative union membership agreements.... 13

        2.  Plaintiffs' agreements to authorize deductions were not made under "duress".... 14

        3.  Plaintiffs' "waiver" argument misunderstands the right at issue......................... 19

    E.  Plaintiffs' proposed standard would itself violate the First Amendment ................... 22

V.     CONCLUSION........................................................................... 23

YOUNGLOVE & COKER, P.L.L.C.
WESTHILLS II OFFICE PARK
1800 COOPER POINT RD SW, BLDG 16
PO BOX 7846
OLYMPIA, WASHINGTON 98507-7846
(360) 357-7791

**TABLE OF AUTHORITIES**

**Federal Court Cases**

*Abood v. Detroit Board of Ed.*,
    431 U.S. 209 (1977)................................................................. 6, 13, 15, 19

*Bain v. California Teachers Ass'n*,
    156 F.Supp.3d 1142 (C.D. Cal. 2015), *subsequent order*, 2016 WL 6804921,
    *appeal dismissed as moot*, 891 F.3d 1206 (9th Cir. 2018) ................................. 16, 20

*Boy Scouts of Am. v. Dale*,
    530 U.S. 640 (2000)................................................................................. 23

*Brady v. United States*,
    397 U.S. 742 (1970)............................................................................. 17, 18

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)................................................................................... 6

*Chicago Teachers Union, Local No. 1 v. Hudson*,
    475 U.S. 292 (1986)................................................................................. 14

*Circuit City Stores, Inc. v. Ahmed*,
    283 F.3d 1198 (9th Cir. 2002) ................................................................... 16

*Cohen v. Cowles Media Co.*,
    501 U.S. 663 (1991)........................................................................... *passim*

*College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*,
    527 U.S. 666 (1999)................................................................................. 20

*Coltec Indus., Inc. v. Hobgood*,
    280 F.3d 262 (3d Cir. 2002)...................................................................... 17

*Curtis Publishing Co. v. Butts*,
    388 U.S. 130 (1967)................................................................................. 21

*Dingle v. Stevenson*,
    840 F.3d 171 (4th Cir. 2016) ................................................................. 18, 21

*Doe v. Devine*,
    703 F.2d 1319 (D.C. Cir. 1983) ................................................................... 4

*Fisk v. Inslee*,
    No. C16-5889-RBL, 2017 WL 4619223 (W.D. Wash. Oct. 16, 2017) ........................... *passim*

*Fisk v. Inslee*,
    No. 17-35957, 2018 WL 6620080 (9th Cir. Dec. 17, 2018)................................. 1, 11

*Fuentes v. Shevin*,
    407 U.S. 67 (1972).................................................................................. 21

*Garrity v. New Jersey*,
    385 U.S. 493 (1967)................................................................................. 17

YOUNGLOVE & COKER, P.L.L.C.
WESTHILLS II OFFICE PARK
1800 COOPER POINT RD SW, BLDG 16
PO BOX 7846
OLYMPIA, WASHINGTON 98507-7846
(360) 357-7791

*Int'l Ass'n of Machinists Dist. Ten & Local Lodge 873 v. Allen*,
    904 F.3d 490 (7th Cir. 2018) ................................................................. 8

*Janus v. AFSCME, Council 31*,
    138 S.Ct. 2448 (2018) ................................................................. *passim*

*Johnson v. Zerbst*,
    304 U.S. 458 (1938) ................................................................. 20

*Kidwell v. Transp. Commc'n Int'l Union*,
    946 F.2d 283 (4th Cir. 1991) ................................................................. 14

*Knox v. Service Employees International Union, Local 1000*,
    567 U.S. 298 (2012) ................................................................. 20

*Minn. State Bd. for Cmty. Colleges v. Knight*,
    465 U.S. 271 (1984) ................................................................. 16

*Mohamed v. Uber Techs., Inc.*,
    848 F.3d 1201 (9th Cir. 2016) ................................................................. 16

*N.L.R.B. v. Granite State Joint Bd. Textile Workers Union*,
    409 U.S. 213 (1972) ................................................................. 10

*N.L.R.B. v. U.S. Postal Serv.*,
    827 F.2d 548 (9th Cir. 1987) ................................................................. 8

*N.L.R.B. v. U.S. Postal Serv.*,
    833 F.2d 1195 (6th Cir. 1987) ................................................................. 9

*New York Times v. Sullivan*,
    376 U.S. 254 (1964) ................................................................. 21

*Police Dep't of City of Chicago v. Mosley*,
    408 U.S. 92 (1972) ................................................................. 22

*Puckett v. United States*,
    556 U.S. 129 (2009) ................................................................. 17

*Reed v. Town of Gilbert, Ariz.*,
    135 S.Ct. 2218 (2015) ................................................................. 22

*Roberts v. U.S. Jaycees*,
    468 U.S. 609 (1984) ................................................................. 23

*Roper v. Simmons*,
    543 U.S. 551 (2005) ................................................................. 18

*Smith v. Superior Court, Cnty. of Contra Costa*,
    No. 18-CV-05472-VC, 2018 WL 6072806 (N.D. Cal. Nov. 16, 2018) ......................... *passim*

*Spevack v. Klein*,
    385 U.S. 511 (1967) ................................................................. 17

*United States v. Oliveros-Orosco*,
    942 F.2d 644 (9th Cir. 1991) ................................................................. 18

YOUNGLOVE & COKER, P.L.L.C.
WESTHILLS II OFFICE PARK
1800 COOPER POINT RD SW, BLDG 16
PO BOX 7846
OLYMPIA, WASHINGTON 98507-7846
(360) 357-7791

*United States v. Zweber*,
    913 F.2d 705 (9th Cir. 1990) ...................................................... 18

**State Court Cases**

*De Pauw Univ. v. Ankeny*,
    97 Wash. 451 (1917).................................................................. 12

**Administrative Decisions**

*United Steelworkers of Am. Local 4671 (National Oil Well, Inc.)*,
    302 NLRB 367 (1991) ................................................................. 9

**Federal Statutory Authorities**

5 U.S.C. §7115(a)-(b) ...................................................................... 9

29 U.S.C. §186(c)(4) ....................................................................... 9

39 U.S.C. §1205 ............................................................................... 9

45 U.S.C. §152 ................................................................................. 9

**State Statutory Authorities**

RCW 41.80.100 ....................................................................... 6, 7, 12

**Federal Rules and Regulations**

Fed. R. Civ. P. 56(a) ........................................................................ 6

**Additional Authorities**

Restatement (Second) Contracts §175(1) ...................................... 15

YOUNGLOVE & COKER, P.L.L.C.
WESTHILLS II OFFICE PARK
1800 COOPER POINT RD SW, BLDG 16
PO BOX 7846
OLYMPIA, WASHINGTON 98507-7846
(360) 357-7791

Defendant Washington Federation of State Employees, AFSCME Council 28 ("WFSE")
moves for summary judgment against all Plaintiffs' claims based on the undisputed stipulated
facts.  *See* Dkt. 44 ("Stip. Facts"); Dkt. 45 (Order re: cross-motions for summary judgment).

## INTRODUCTION

This Court recently denied Plaintiffs' motion for a preliminary injunction, ruling that
Plaintiffs had "failed to demonstrate a likelihood of success on the merits" or even "that there are
serious questions going to the merits."  Order Denying PI (Dkt. 37) at 2.  The parties then agreed
to submit cross-motions for summary judgment on stipulated facts that are materially
indistinguishable from those that were presented to the Court during the preliminary injunction
motion briefing.  *See* Stip. & Order (Dkt. 45); Stip. Facts ¶26.  On those undisputed facts,
Plaintiffs' claims fail as a matter of law.

Plaintiffs each voluntarily signed union membership agreements.  The agreements clearly
stated that Plaintiffs were agreeing to authorize wage deductions equal to union dues for a one-
year period and that the agreement was not a condition of public employment.  In exchange,
Plaintiffs each received union membership rights and access to members-only benefits.  The First
Amendment does not permit Plaintiffs to renege on their voluntary contractual obligations.  As
this Court recognized in denying Plaintiffs' preliminary injunction motion, nothing in *Janus v.
AFSCME, Council 31*, 138 S.Ct. 2448 (2018), changes that conclusion:

> Plaintiffs entered into a contract with the Union to be Union members and agreed
> in that contract to pay Union dues for one year.  "[T]he First Amendment does not
> confer … a constitutional right to disregard promises that would otherwise be
> enforced under state law." *Cohen v. Cowles Media Co.*, 501 U.S. 663, 672 (1991).
> A person has the right to contract away their First Amendment protections.  *See
> Fisk v. Inslee,* [C16-5889-RBL,] 2017 WL 4619223 (W.D. Wash. Oct. 16,
> 2017).[1] Plaintiffs' assertions that they didn't knowingly give up their First
> Amendment rights before *Janus* rings hollow.  *Janus* says nothing about people
> [who] join a Union, agree to pay dues, and then later change their mind about
> paying union dues.

---

[1] The Ninth Circuit recently affirmed *Fisk* in an unpublished disposition.  *See Fisk v. Inslee*, No. 17-35957, 2018 WL
6620080 (9th Cir. Dec. 17, 2018).

DEFENDANT WFSE'S MOTION FOR SUMMARY JUDGMENT
(18-cv-05620) - 1

YOUNGLOVE & COKER, P.L.L.C.
WESTHILLS II OFFICE PARK
1800 COOPER POINT RD SW, BLDG 16
PO BOX 7846
OLYMPIA, WASHINGTON 98507-7846
(360) 357-7791

1    Dkt. 37 at 8-9. The Northern District of California recently adopted the same basic reasoning in a

2    materially indistinguishable case. *See Smith v. Superior Court, Cnty. of Contra Costa*, No. 18-

3    CV-05472-VC, 2018 WL 6072806, at *1 (N.D. Cal. Nov. 16, 2018).  For those same reasons,

4    summary judgment should be granted for defendants.

## BACKGROUND

6    **1.**  The material facts are undisputed.  *See* Stip. Facts.  Defendant WFSE serves as the

7    collective bargaining representative for about 40,000 State of Washington employees in multiple

8    bargaining units.  *Id.* ¶1.  WFSE has more than 35,000 dues paying members.  *Id.* ¶2.  Each of

9    those members voluntarily signed a membership agreement expressly authorizing WFSE to

10   collect dues through wage deductions in exchange for admission to union membership and

11   access to members-only benefits.  *See id.* ¶¶11, 17-18.  Plaintiffs and other "[e]mployees

12   represented by WFSE are not required to become WFSE members as a condition of employment.

13   WFSE members are also not required to remain WFSE members, and they may resign from

14   membership at any time." *Id.* ¶8.

15   Plaintiffs are seven state employees in WFSE bargaining units.  Stip. Facts ¶3.  Prior to

16   July 2017, Plaintiffs voluntarily signed membership agreements by which they joined WFSE and

17   authorized dues deductions.  *Id.* ¶9 & Exs. 4-10 (initial membership agreements).  In about July

18   2017, WFSE began asking its members to sign new membership agreements in which they

19   would commit to pay an amount equal to dues through wage deductions for one year.  *Id.* ¶12.

20   In 2017 or 2018, each Plaintiff voluntarily signed a new membership and deduction

21   authorization agreement.  Stip. Facts ¶9 & Exs. 11-17 (Plaintiffs' "current authorization cards").

22   Plaintiffs' agreements state in large bold letters "100% UNION." *Id.* Exs. 11-17.  Below those

23   big bold letters is a statement saying: "YES! I want to be a union member," and the following

24   statement authorizing their State employer to deduct an amount equal to union dues from their

25   wages for a one-year period and remit it to WFSE:

26       Effective immediately, I hereby ***voluntarily authorize*** and direct my Employer to
         deduct from my pay each pay period, the amount of dues as set in accordance

27

---

DEFENDANT WFSE'S MOTION FOR SUMMARY JUDGMENT
(18-cv-05620) - 2

YOUNGLOVE & COKER, P.L.L.C.
WESTHILLS II OFFICE PARK
1800 COOPER POINT RD SW, BLDG 16
PO BOX 7846
OLYMPIA, WASHINGTON 98507-7846
(360) 357-7791

with the WFSE Constitution and By-Laws and authorize my Employer to remit such amount semi-monthly to the Union (currently 1.5% of my salary per pay period not to exceed the maximum).  This *voluntary authorization and assignment shall be irrevocable for a period of one year* from the date of execution or until the termination date of the collective bargaining agreement (if there is one) between the Employer and the Union, whichever occurs sooner, and for year to year thereafter unless I give the Employer and the Union written notice of revocation not less than ten (10) days and not more than twenty (20) days before the end of any yearly period, *regardless of whether I am or remain a member of the Union*, unless I am no longer in active pay status in a WFSE bargaining unit; provided however, if the applicable collective-bargaining agreement specifies a longer or different revocation period, then only that period shall apply.  This card supersedes any prior checkoff authorization card I signed.

*Id.* (emphases added).  Each Plaintiff's signature appears just below text that reads: "I recognize that my authorization of dues deductions, and the continuation of such authorization from one year to the next, is *voluntary and not a condition of my employment*."  *Id.* (emphasis added).  By voluntarily signing both their initial membership agreements and their current authorization cards, Plaintiffs each agreed to deductions that were greater than the representation fees that they otherwise would have paid had they not affirmatively chosen to become union members.  *See* Stip. Facts ¶¶14-15.

**2.**  By becoming union members, Plaintiffs received rights and benefits not available to nonmembers, including the right to vote on whether to ratify a collective bargaining agreement, to vote in union officer elections, to run for office, and to participate in WFSE's internal affairs. Stip. Facts ¶17.  Members also gain access to special "members-only" benefits "including discounts on goods and services, including home mortgages and wireless phone plans, access to scholarship programs, free legal advice, discounted dental benefits, annual family campouts, access to the Union Sportsman's Alliance, and access to the AFSCME Free College program. WFSE also uses membership dues to contribute to the Foundation for Working Families, which provides disaster/hardship relief grants to union members."  *Id.* ¶18.

As quoted above, Plaintiffs' current deduction authorizations are "irrevocable for a period of one year … or until the termination date of the collective bargaining agreement …, whichever

DEFENDANT WFSE'S MOTION FOR SUMMARY JUDGMENT
(18-cv-05620) - 3

YOUNGLOVE & COKER, P.L.L.C.
WESTHILLS II OFFICE PARK
1800 COOPER POINT RD SW, BLDG 16
PO BOX 7846
OLYMPIA, WASHINGTON 98507-7846
(360) 357-7791

occurs sooner." Stip. Facts Exs. 11-17. This one-year commitment reflects the fact that union members have the right to participate in membership decisions that can have long-term effects that extend well beyond the current payroll period, such as who their officers should be for a set term and whether a proposed multi-year contract should be ratified or rejected. *See* Stip. Facts ¶17. For WFSE, the one-year period also provides increased funding predictability. Without an irrevocability period, employees could opt into dues deduction for a single pay period in order to access a particular members-only benefit, and then revoke their agreement immediately thereafter, without having borne their fair share of the costs of providing that benefit.[2] For both WFSE and the State, moreover, the one-year commitment is easier to administer than a system in which employees could constantly authorize and de-authorize deductions.

　　**3.** Plaintiffs have each resigned their union memberships. *See* Stip. Facts ¶20. At the time they resigned, each Plaintiff still had time left on the one-year deduction commitments to which they each had previously agreed. *Id.* ¶23. Pursuant to each Plaintiff's signed authorization agreement, the State Defendants continued to deduct an amount equal to dues after the Plaintiffs' resignations. *Id.* ¶22.[3] "For Plaintiffs Belgau, Bybee, and Ostrander, those one-year terms expired in November 2018, and the State Defendants stopped deducting an amount equal to union dues from the wages of those Plaintiffs." *Id.* ¶23. For the remaining Plaintiffs, deductions will continue until "one year after each Plaintiff signed his or her current card, without requiring Plaintiffs to again object to the deductions." *Id.*

　　**4.** Plaintiffs filed this lawsuit and a motion for an "emergency" TRO on August 2, 2018. Complaint (Dkt. 1); Mot. for TRO (Dkt. 2). On August 6, 2018, this Court denied Plaintiffs' TRO motion, ruling that "Plaintiffs have failed to demonstrate that they are likely to suffer

---

[2] This propensity is known as "adverse selection" and is why, for example, health insurers limit new enrollment to a limited annual open-enrollment period. *See, e.g.*, *Doe v. Devine*, 703 F.2d 1319, 1334 (D.C. Cir. 1983).

[3] The collective bargaining agreement that applies to Plaintiffs provides that their employer will deduct an amount equal to union dues from "employees who request such deduction in writing" and the employer "will honor the terms and conditions of each employee's signed membership card." Stip. Facts Ex. 3 Art. 40.2; *see* Stip. Facts ¶¶6-7, 22.

DEFENDANT WFSE'S MOTION FOR SUMMARY JUDGMENT
(18-cv-05620) - 4

YOUNGLOVE & COKER, P.L.L.C.
WESTHILLS II OFFICE PARK
1800 COOPER POINT RD SW, BLDG 16
PO BOX 7846
OLYMPIA, WASHINGTON 98507-7846
(360) 357-7791

irreparable harm in the absence of preliminary relief."  Order Denying TRO (Dkt. 11) at 4 (internal quotation marks omitted).

On August 23, 2018, Plaintiffs filed an Amended Complaint, in which they assert six "claims for relief," all of which are premised on their contention that honoring the contractual deduction agreements they each voluntarily signed violates the First Amendment.  *See* Dkt. 21 ¶¶53-83.[4]

On September 13, 2018, Plaintiffs moved for a preliminary injunction.  *See* Dkt. 33.  On October 11, 2018, this Court denied Plaintiffs' motion, ruling that not only had Plaintiffs failed to demonstrate any irreparable harm, but they also "failed to demonstrate a 'likelihood of success on the merits' or that there are 'serious questions going to the merits.'"  Dkt. 37 at 8.  The Court rejected Plaintiffs' argument that their affirmative voluntary agreements to authorize deductions were invalid merely because they were signed before the Supreme Court issued *Janus*, explaining that "*Janus* says nothing about people [who] join a Union, agree to pay dues, and then later change their mind about paying union dues. … '[A] worker can refuse to associate with or join a union.  That is her prerogative.  But, once she joins voluntarily, in writing, she has the obligation to perform the terms of her agreement.  … The Constitution says nothing affirmative about reneging legal and lawful responsibilities freely undertaken.'"  *Id.* at 9 (quoting *Fisk*, 2017 WL 4619223, at *5).  The Court also rejected Plaintiffs' argument "that they were under duress when they signed the agreements at issue," holding that Plaintiffs "fail to make an adequate showing of duress …."  *Id.*

The parties have now stipulated to resolving the case on cross-motions for summary judgment based on facts that are materially indistinguishable from those presented to the Court during the preliminary injunction briefing.  "Apart from the facts set forth in [the parties']

---

[4] Plaintiffs' fifth claim, styled as a claim for "Unjust Enrichment," does not expressly reference the First Amendment, but alleges that "[t]he circumstances of Defendants' scheme make it unjust for WFSE to retain" the deductions that Plaintiffs agreed to pay by signing their deduction authorization cards. Dkt. 21 ¶¶74-77.  The only reason that Plaintiffs allege in the Amended Complaint that the deductions were "unjust," however, is Plaintiffs' contention that enforcing their signed deduction authorization agreements violates the First Amendment.

DEFENDANT WFSE'S MOTION FOR SUMMARY JUDGMENT
(18-cv-05620) - 5

YOUNGLOVE & COKER, P.L.L.C.
WESTHILLS II OFFICE PARK
1800 COOPER POINT RD SW, BLDG 16
PO BOX 7846
OLYMPIA, WASHINGTON 98507-7846
(360) 357-7791

stipulation," Plaintiffs "do not contend that additional facts exist now that make the Plaintiffs' current cards … unenforceable."  Stip. Facts ¶25.

## ARGUMENT

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 "mandates the entry of summary judgment … against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Plaintiffs' claims here fail on the undisputed facts as a matter of law.

It is undisputed that each Plaintiff voluntarily signed an agreement with WFSE in which the Plaintiff affirmatively committed to pay an amount equal to union dues for one year, in exchange for access to union membership and members-only benefits.  Stip. Facts ¶¶8-9, 12, 17-18 & Exs. 11-17.  Plaintiffs' claims are based on their contention that they have a First Amendment right to renege on those contracts they made to pay money, because the government could not have required them to pay the money in the first place.  They previously have alternatively argued that their own agreements were signed under "duress" because they were signed when *Abood v. Detroit Bd. of Ed.*, 431 U.S. 209 (1977), rather than *Janus*, was the law of the land.  Neither proposition is true.

**A.**   **Washington law and the collective bargaining agreement simply provide for the state employer to honor voluntary contractual obligations**

Plaintiffs' Amended Complaint challenges the constitutionality of RCW 41.80.100 and WFSE Amended 2017-2019 Collective Bargaining Agreement ("CBA"), Articles 40.2, 40.3, and 40.6, claiming that they "compel[] the State to deduct union dues/fees from the Plaintiffs' … wages even though they have not clearly and affirmatively consented to the deductions … and because it forces Plaintiffs … to maintain union membership over their objection."  Dkt. 21 ¶¶54, 60; *see also id.* ¶30 (alleging that "WFSE is preventing Plaintiffs from cancelling union membership …").  But Plaintiffs now concede that none of them have been forced to "maintain

YOUNGLOVE & COKER, P.L.L.C.
WESTHILLS II OFFICE PARK
1800 COOPER POINT RD SW, BLDG 16
PO BOX 7846
OLYMPIA, WASHINGTON 98507-7846
(360) 357-7791

union membership over their objection." *Id.* ¶54.  To the contrary, Plaintiffs were allowed to, and did, resign from union membership.  Stip. Facts ¶21.  It is undisputed that "Employees represented by WFSE are not required to become WFSE members as a condition of employment," and "WFSE members are also not required to remain WFSE members, and they may resign from membership at any time."  *Id.* ¶8.  Plaintiffs' only complaint here is that they must pay the amounts that they voluntarily and expressly agreed to pay when they signed their current authorization agreements.

Nothing in the statutes or CBA that Plaintiffs challenge compels involuntary dues deductions.  The statutes and CBA simply provide that the State will deduct dues in accordance with the Plaintiffs' own express written authorizations.  The provision of RCW 41.80.100 relevant here provides that "[*u*]*pon written authorization of an employee*" the State employer will "deduct from the payments to the employee the monthly amount of dues as certified by the secretary of the exclusive bargaining representative" and "transmit the same to the treasurer of the exclusive bargaining representative."  RCW 41.80.100(3)(a) (emphasis added).  The WFSE CBA, in turn, provides that "[t]he Employer agrees to deduct an amount equal to the membership dues from the salary of employees *who request such deduction in writing* … made on a Union payroll deduction authorization card.  The Employer will honor the terms and conditions of *each employee's signed membership card*."  Stip. Facts. Ex. 3 Art. 40.2 (emphases added).  Thus, RCW 41.80.100 and the CBA provide that the State will only make deductions from an employee's wages when the employee authorizes those deductions in writing, and will continue payroll deductions over an employee's later objection only when "the terms and conditions of each employee's signed membership card" require the continuation of those deductions.  *Id*.  As such, neither the statute nor any CBA provision compels involuntary dues deductions, and the only constitutional issue is whether the State violates the First Amendment by enforcing the terms of Plaintiffs' own membership agreements.

DEFENDANT WFSE'S MOTION FOR SUMMARY JUDGMENT
(18-cv-05620) - 7

YOUNGLOVE & COKER, P.L.L.C.
WESTHILLS II OFFICE PARK
1800 COOPER POINT RD SW, BLDG 16
PO BOX 7846
OLYMPIA, WASHINGTON 98507-7846
(360) 357-7791

**B.     WFSE's voluntary membership agreements constitute binding contracts**

Plaintiffs' membership agreements are binding contracts.  *See* Dkt. 37 at 8 ("Here, unlike in *Janus*, the Plaintiffs entered into a contract with the Union to be Union members and agreed in that contract to pay Union dues for one year."); *Smith*, 2018 WL 6072806, at *1 (plaintiff who signed membership agreement "formed a contract with [the union] in which he agreed to pay dues for a year").  Plaintiffs' contracts included a dues deduction authorization.  *See supra* at 2-3.  "By signing an authorization, the employee directs the employer to deduct union dues or fees routinely from the employee's paycheck and to remit those funds to the applicable union.  Many of these authorizations are irrevocable for a specified period—often one year …."  *Int'l Ass'n of Machinists Dist. Ten & Local Lodge 873 v. Allen*, 904 F.3d 490, 492 (7th Cir. 2018); *Fisk*, 2017 WL 4619223, at *4 (signed card with dues authorization agreement was "a valid contract").

The one-year dues commitment period serves important purposes.  First, the dues commitment period reflects the fact that union members have the right to participate in important membership decisions that can have long-term effects that extend well beyond the current payroll period, such as voting for union officers and whether a proposed multi-year contract should be ratified or rejected.  *See* Stip. Facts ¶17 (summarizing membership rights); *Fisk*, 2017 WL 4619223, at *3 (explaining that "the irrevocability of a Union member's dues authorization for a set period … prevents [members] who sign cards from gaming the Union's system of governance").  Second, unions must be able to make financial commitments by renting offices, hiring staff, and entering into contracts with other vendors, and the immediate resignation of a large group of members could leave the union unable to meet those commitments.  *See N.L.R.B. v. U.S. Postal Serv.*, 827 F.2d 548, 553 (9th Cir. 1987) ("For the period of irrevocability, the union can be certain that dues will not be temporarily withheld to protest some union decision."); *Fisk*, 2017 WL 4619223, at *3 (period of irrevocability "provides [the union] with financial stability by ensuring a predictable revenue stream" and allows union to "forecast how much revenue it will receive over a given year and budget accordingly" and to "make long-term

DEFENDANT WFSE'S MOTION FOR SUMMARY JUDGMENT
(18-cv-05620) - 8

YOUNGLOVE & COKER, P.L.L.C.
WESTHILLS II OFFICE PARK
1800 COOPER POINT RD SW, BLDG 16
PO BOX 7846
OLYMPIA, WASHINGTON 98507-7846
(360) 357-7791

1  financial commitments without the possibility of a sudden loss of revenue").  Third, the stability

2  that such authorizations provide enables unions to provide enhanced benefits for their members

3  while reducing the risk that some workers might become members solely to obtain a particular

4  benefit and then immediately cancel their dues authorizations, which would be unfair to other

5  members.  *See* Stip. Facts ¶18 (summarizing members-only benefits including, e.g., access to

6  discounted mortgages).

7          The one-year dues authorization agreements at issue here are materially indistinguishable

8  from agreements that Congress has repeatedly endorsed.  Under the National Labor Relations

9  Act ("NLRA"), covered employers may transmit to their employees' union representative

10         money deducted from the wages of employees in payment of membership dues in
           a labor organization: *Provided*, That the employer has received from each
11         employee, on whose account such deductions are made, a written assignment
           *which shall not be irrevocable for a period of more than one year*, or beyond the
12         termination date of the applicable collective agreement, whichever occurs sooner.

13  29 U.S.C. §186(c)(4) (emphasis added); *see also* 45 U.S.C. §152, Eleventh (b) (similar under

14  Railway Labor Act); 5 U.S.C. §7115(a)-(b) (federal employees' dues authorizations); 39 U.S.C.

15  §1205 (Postal Service employees).

16         It is well-established that dues authorization agreements create binding financial

17  obligations that survive an employee's resignation from the union.  *See, e.g.*, *United*

18  *Steelworkers of Am. Local 4671 (National Oil Well, Inc.)*, 302 NLRB 367, 368 (1991) (dues

19  were still owed after employee's resignation of union membership because, under express terms

20  of authorization employee signed, he "clearly authorized the continuation of his dues deduction

21  even in the absence of union membership"); *N.L.R.B. v. U.S. Postal Serv.*, 833 F.2d 1195, 1196

22  (6th Cir. 1987) (dues authorization not revocable despite resignation from membership).

23         In the very context at issue here—a dues authorization agreement with a one-year

24  irrevocability period signed by a union member who resigned from union membership before

25  that one-year period expired—the Ninth Circuit explained that such a "dues-checkoff

26  authorization is a contract," and "[a] party's duty to perform even a wholly executory contract is

27

DEFENDANT WFSE'S MOTION FOR SUMMARY JUDGMENT
(18-cv-05620) - 9

YOUNGLOVE & COKER, P.L.L.C.
WESTHILLS II OFFICE PARK
1800 COOPER POINT RD SW, BLDG 16
PO BOX 7846
OLYMPIA, WASHINGTON 98507-7846
(360) 357-7791

not excused merely because he decides that he no longer wants the consideration for which he has bargained…. [T]he clear 'legal import' of the authorization's language … b[i]nd[s] the employee to abstain from revoking the authorization," even after he resigns union membership. *N.L.R.B. v. U.S. Postal Serv.*, 827 F.2d at 554; *see also* Dkt. 37 at ("'[A] worker can refuse to associate with or join a union.  That is her prerogative.  But, once she joins voluntarily, in writing, she has the obligation to perform the terms of her agreement.'") (quoting *Fisk*, 2017 WL 4619223, at *5); *Smith*, 2018 WL 6072806, at *1 (by signing card, "Smith specifically consented for the dues deduction to continue for the full contractual period even if he resigned from the Union.  Smith cannot now invoke the First Amendment to wriggle out of his contractual duties.") (footnote omitted).

The caselaw about union dues commitments reflects the general principle that an individual has the right to resign from a voluntary association "as he sees fit subject of course to any financial obligations due and owing the group with which he was associated." *N.L.R.B. v. Granite State Joint Bd. Textile Workers Union*, 409 U.S. 213, 216 (1972) (internal quotation marks omitted).

## C.    The First Amendment does not provide Plaintiffs with a right to breach their voluntary contractual obligations

Plaintiffs urge that the enforcement of their deduction authorization agreements violates their First Amendment rights.  But it is well-established that "the First Amendment does not confer … a constitutional right to disregard promises that would otherwise be enforced under state law."  *Cohen v. Cowles Media Co.*, 501 U.S. 663, 672 (1991); *see* Dkt. 37 at 8-9.  In *Cohen*, the Supreme Court rejected the claim that the First Amendment prohibited enforcement of a newspaper's promise not to reveal the identity of a confidential source.  The newspaper had breached its promise and the source sued in state court under the doctrine of promissory estoppel. *Cohen*, 501 U.S. at 666.  The Minnesota Supreme Court held that the state's enforcement of the confidentiality promise would violate the newspaper's First Amendment rights, *id.* at 667, but

DEFENDANT WFSE'S MOTION FOR SUMMARY JUDGMENT
(18-cv-05620) - 10

YOUNGLOVE & COKER, P.L.L.C.
WESTHILLS II OFFICE PARK
1800 COOPER POINT RD SW, BLDG 16
PO BOX 7846
OLYMPIA, WASHINGTON 98507-7846
(360) 357-7791

the U.S. Supreme Court reversed.  The Court recognized that the doctrine of promissory estoppel simply "requires those who make certain kinds of promises to keep them." *Id.* at 672.  The application of promissory estoppel therefore did not "offend the First Amendment." *Id.* at 669.

The same is true with respect to the State's compliance with the terms of Plaintiffs' deduction authorization agreements.  The State's continuation of payroll deductions pursuant to agreements the Plaintiffs freely entered into enforces WFSE's rights under general contract law in the same manner as the court's enforcement of the newspaper's obligations in *Cohen*. *See* 501 U.S. at 668.  As *Cohen* holds, the First Amendment is not a license for a party to an otherwise valid contract to renege on her promises.  *Cohen* controls this case.

The District Court in *Fisk* reached that very conclusion in a materially indistinguishable case brought by former union members who sought to terminate their public employer's enforcement of the voluntary payroll dues deduction authorizations they had signed before the end of the period of irrevocability set forth in their membership agreements:

> The freedom of speech and the freedom of association do not trump the obligations and promises voluntarily and knowingly assumed.  The other party to that contract has every reason to depend on those promises for the purpose of planning and budgeting resources.  The Constitution says nothing affirmative about reneging legal and lawful responsibilities freely undertaken.

*Fisk*, 2017 WL 4619223, at *5.  In denying Plaintiffs preliminary injunction motion, this Court stated that "[t]he Court finds the reasoning in *Fisk* persuasive." Dkt. 37 at 9.  The Ninth Circuit recently affirmed the district court's summary judgment order in *Fisk. Fisk*, 2018 WL 6620080.  The Northern District of California has also since adopted the same basic reasoning in denying a preliminary injunction in a case based on claims indistinguishable from Plaintiffs' claims here.  *See Smith*, 2018 WL 6072806, at *1.

*Cohen* also refutes Plaintiffs' argument (presented during the preliminary injunction briefing) that parties can renege on private agreements that purportedly implicate constitutional rights unless the agreements "(1) expressly inform the employee of the actual constitutional right being waived, and (2) state that the employee is waiving that right."  Mot. for PI (Dkt. 33) at 17.

DEFENDANT WFSE'S MOTION FOR SUMMARY JUDGMENT
(18-cv-05620) - 11

YOUNGLOVE & COKER, P.L.L.C.
WESTHILLS II OFFICE PARK
1800 COOPER POINT RD SW, BLDG 16
PO BOX 7846
OLYMPIA, WASHINGTON 98507-7846
(360) 357-7791

Nothing in *Cohen* suggests that the newspaper's promise not to reveal the confidential source's identity included any express statement that the newspaper was waiving its First Amendment rights by making an enforceable promise. *See generally* 501 U.S. 663.  Moreover, contracts to pay for annual magazine subscriptions or to contribute to National Public Radio for a year in exchange for consideration (which indisputably involve support for First Amendment-protected speech) are enforceable without any recital that the First Amendment would prohibit the government from compelling such payments. *See also De Pauw Univ. v. Ankeny*, 97 Wash. 451, 454-55 (1917) (pledge to make payments over set time period to university endowment fund was enforceable).

Plaintiffs have previously argued that *Cohen* is "inapposite" because it only applies to "law[s] of general applicability," Dkt. 33 at 12 (internal quotation marks omitted), but that contention is meritless.  Contract law is a law of general applicability.  The blackletter legal principle that the terms of a contract are enforceable despite one party's later unilateral desire to renege on his promises is "generally applicable to the daily transactions of all the citizens" of Washington.  *Cohen*, 501 U.S. at 670; *see, e.g.*, *De Pauw Univ.*, 97 Wash. at 454-55.  Washington's basic contract law, like the promissory estoppel law at issue in *Cohen*, "simply requires those making promises to keep them.  The parties themselves … determine the scope of their legal obligations," and any requirement to make continued payments for a defined period after resigning from union membership is "self-imposed."  501 U.S. at 670-71.

Plaintiffs have previously argued RCW 41.80 is not a law of general applicability.  Dkt. 33 at 13.  But the only portion of RCW 41.80 even arguably at issue here is the provision authorizing a public employer to deduct monthly dues and transmit those dues to an exclusive bargaining representative "[u]pon written authorization of an employee." RCW 41.80.100(3)(a). Even without that statutory provision, Plaintiffs' written dues authorizations would be (and are)

YOUNGLOVE & COKER, P.L.L.C.
WESTHILLS II OFFICE PARK
1800 COOPER POINT RD SW, BLDG 16
PO BOX 7846
OLYMPIA, WASHINGTON 98507-7846
(360) 357-7791

1    enforceable under general principles of Washington contract law, so enforcing those

2    authorizations does not violate Plaintiffs' First Amendment rights.  *See supra* at 8-10.[5]

3    **D.    *Janus* does not change the governing legal analysis here**

4          *Janus* did not change the law governing the formation and enforcement of voluntary

5    contracts between unions and their members, or *Cohen*'s holding that voluntary contracts are

6    fully enforceable even when the First Amendment would have precluded the government from

7    requiring a party to engage in the same activity.  Nor does the fact that *Janus* overruled *Abood*

8    mean that Plaintiffs' membership agreements were signed under duress.  Nor does *Janus* mean

9    that voluntary union membership agreements must include special disclaimers not required in

10   any other contracts.

11       **1.    *Janus* does not address voluntary, affirmative union membership agreements**

12         As a threshold matter, Plaintiffs' reliance on *Janus* is misplaced because the relationship

13   between unions and their members was not at issue in *Janus*.  The question in *Janus* was whether

14   it was consistent with the First Amendment for a state to compel nonmembers of a union—i.e.,

15   individuals who have *not* affirmatively chosen to join a union and have *not* affirmatively chosen

16   to enter into a contract to secure member benefits in exchange for paying dues—to pay fees to a

17   union as a condition of government employment.  138 S.Ct. at 2460.  The passage from *Janus* on

18   which Plaintiffs rely, *see* Dkt. 33 at 6, makes *Janus*'s focus on nonmembers patently clear:

19         Neither an agency fee nor any other payment to the union may be deducted from a
           *nonmember's* wages, nor may any other attempt be made to collect such a
20         payment, unless the employee affirmatively consents to pay.  By agreeing to pay,
           *nonmembers* are waiving their First Amendment rights, and such a waiver cannot
21         be presumed.

22   138 S.Ct. at 2486 (emphases added).

23

24   ───────────────

     [5] Plaintiffs have also previously attempted to avoid *Cohen* by arguing that general contract law principles cannot
25   apply to an agreement between a union member and a union.  Dkt. 33 at 12.  But there is no legal basis for treating
     such agreements, when they are *not* a condition of public employment, any differently from an agreement to make
26   payments to any other organization in exchange for valuable consideration—and indeed, as explained in greater
     detail below, treating voluntary agreements between unions and their members differently from other agreements
27   simply because unions engage in First Amendment-protected activity would itself violate core First Amendment
     principles.  *See infra* at 22-23.

DEFENDANT WFSE'S MOTION FOR SUMMARY JUDGMENT
(18-cv-05620) - 13

YOUNGLOVE & COKER, P.L.L.C.
WESTHILLS II OFFICE PARK
1800 COOPER POINT RD SW, BLDG 16
PO BOX 7846
OLYMPIA, WASHINGTON 98507-7846
(360) 357-7791

*Janus* held that the First Amendment prohibits the government from forcing nonmembers to pay mandatory agency fees to a union and from assuming that nonmembers wish to support the union when they have not affirmatively consented to the payments.  The passage in *Janus* that Plaintiffs rely upon makes clear that payments from nonmembers cannot be collected through an opt-out system, which had been used in the past under *Chicago Teachers Union, Local No. 1 v. Hudson*, 475 U.S. 292 (1986), to collect some non-mandatory nonmember fees.

By contrast, Plaintiffs' continued payment of union dues here results not from state compulsion, or from an opt-out system, but from their purely voluntary decision to affirmatively enter into contractual agreements with WFSE.  When they signed the authorization agreements they now seek to revoke, each Plaintiff attested that "my authorization of dues deductions … is voluntary and not a condition of my employment."  Stip. Facts Exs. 11-17. Plaintiffs have stipulated that they were free to choose not to sign these authorization agreements.  *See* Stip. Facts ¶¶8, 12.  Plaintiffs' voluntary and affirmative decisions to choose union membership and make a one-year deduction commitment are completely different from the payments at issue in *Janus*.  *See Kidwell v. Transp. Commc'n Int'l Union*, 946 F.2d 283, 292-93 (4th Cir. 1991) ("Where the employee has a choice of union membership and the employee chooses to join, the union membership money is not coerced.  The employee is a union member voluntarily.").

Like the plaintiff in *Smith*, Plaintiffs here "want[] *Janus* to stand for the proposition that any union member can change his mind at the drop of a hat, invoke the First Amendment, and renege on his contractual obligation to pay dues."  *Smith*, 2018 WL 6072806, at *1.  But, as this Court has recognized, "*Janus* says nothing about people [who] join a Union, agree to pay dues, and then later change their mind about paying union dues."  Dkt. 37 at 9; *see also Smith*, 2018 WL 6072806, at *1 (*Janus* "does not give Smith license to evade his contract").

### 2.    Plaintiffs' agreements to authorize deductions were not made under "duress"

Plaintiffs have previously urged that their deduction agreements are void or voidable because they were made under "duress as a matter of law."  Dkt 33 at 15.  But that argument

---

DEFENDANT WFSE'S MOTION FOR SUMMARY JUDGMENT
(18-cv-05620) - 14

YOUNGLOVE & COKER, P.L.L.C.
WESTHILLS II OFFICE PARK
1800 COOPER POINT RD SW, BLDG 16
PO BOX 7846
OLYMPIA, WASHINGTON 98507-7846
(360) 357-7791

fundamentally misunderstands what "duress" means and fails to acknowledge the options available to Plaintiffs.  In denying Plaintiffs' preliminary injunction motion, this Court held that Plaintiffs "fail[ed] to make an adequate showing of duress."  Dkt. 37 at 9.  Plaintiffs have now stipulated to facts materially indistinguishable from those that were before the Court on the preliminary injunction motion, and Plaintiffs concede that they "do not contend that additional facts exist now that make the Plaintiffs' current cards … unenforceable."  Stip. Facts ¶25.  Plaintiffs have thus failed to present any facts supporting their contentions of "duress."

Plaintiffs' theory is that they signed their membership agreements under duress because, under *Abood* and its progeny, nonmembers were required to pay a representation fee—which undisputedly was less than the dues they agreed to pay as union members.  *See* Amended Complaint (Dkt. 21) ¶33; Stip. Facts ¶15.  But the fact that the amount of money Plaintiffs could have saved by refraining from union membership at the time they chose to become union members was less than the amount they can save after *Janus* does not mean that their choice to become union members was made under "duress."  A party seeking to void a contract on grounds of "duress" must prove that she was induced to sign the contract by an improper *threat*—i.e., a communication that instills fear that, unless she signs the demanded contract, she will face some consequence worse than the status quo existing in the absence of a contract.  *See* Restatement (Second) Contracts §175(1) ("If a party's manifestation of assent is induced by an improper *threat* by the other party that leaves the victim *no reasonable alternative*, the contract is voidable by the victim.") (emphases added); *id.* Illus. 8 ("A, seeking to induce B to make a contract to sell land to A, threatens to poison B unless B makes the contract.").

Plaintiffs were subjected to no threat that, had they decided not to affirmatively join the union, they would be subject to some punishment or harm that they could only avoid by joining the union.  When they signed their deduction authorization cards, each Plaintiff expressly agreed that "my authorization of dues deductions … is voluntary and not a condition of my employment."  Stip. Facts Exs. 11-17.  The undisputed facts confirm Plaintiffs' own written

DEFENDANT WFSE'S MOTION FOR SUMMARY JUDGMENT
(18-cv-05620) - 15

YOUNGLOVE & COKER, P.L.L.C.
WESTHILLS II OFFICE PARK
1800 COOPER POINT RD SW, BLDG 16
PO BOX 7846
OLYMPIA, WASHINGTON 98507-7846
(360) 357-7791

acknowledgments that their deduction authorizations were entirely voluntary.  Had Plaintiffs not decided to join the union, they would have paid representation fees that were *lower* than the deductions they affirmatively agreed to pay when they became union members.  *See* Stip. Facts ¶¶14-15.  Other employees in WFSE-represented positions chose not to join the union and to instead pay only representation fees.  *Id.* ¶¶1, 2, 8, 14.  Plaintiffs have stipulated that nothing prevented them from making the same choice.  *See id.* ¶8 ("Employees represented by WFSE are not required to become WFSE members as a condition of employment.  WFSE members are also not required to remain WFSE members, and they may resign from membership at any time.").  Indeed, the undisputed facts to which Plaintiffs have stipulated make no suggestion that Plaintiffs were induced to sign their deduction authorization cards against their will for any reason.  *See id.* ¶25 (Plaintiffs stipulate that no other facts exist that would make their current deduction authorizations unenforceable).[6]

Plaintiffs also previously complained that had they not agreed to pay union dues they would not have had access to members-only benefits.  Dkt. 33 at 11-12.  But there is nothing improper about the union making certain benefits available only to members who agree to pay dues.  *See, e.g.*, *Bain v. California Teachers Ass'n*, 156 F.Supp.3d 1142, 1147, 1152-53 (C.D. Cal. 2015) (dismissing complaint alleging that union's offering of members-only benefits to dues-paying members somehow violated First Amendment, reasoning that union's choices regarding member benefits involve no state action and thus are not subject to First Amendment challenge), *subsequent order*, 2016 WL 6804921, at *7 (C.D. Cal. May 2, 2016) (dismissing second amended complaint on same grounds), *appeal dismissed as moot*, 891 F.3d 1206 (9th Cir. 2018); *see also Minn. State Bd. for Cmty. Colleges v. Knight*, 465 U.S. 271, 289-90 (1984) (that

---

[6] Plaintiffs have pointed out that the union drafted the membership agreements and that Plaintiffs did not consult with attorneys before signing those agreements (although they concede they were not prevented from doing so). Stip. Facts ¶10.  Those facts are true for most contracts people sign and do not establish duress or any other defense to enforceability.  *See, e.g.*, *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1200 (9th Cir. 2002) (arbitration agreement enforceable where employee had opportunity to opt out but did not do so); *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016) (same).

DEFENDANT WFSE'S MOTION FOR SUMMARY JUDGMENT
(18-cv-05620) - 16

YOUNGLOVE & COKER, P.L.L.C.
WESTHILLS II OFFICE PARK
1800 COOPER POINT RD SW, BLDG 16
PO BOX 7846
OLYMPIA, WASHINGTON 98507-7846
(360) 357-7791

1    nonmembers may feel some "pressure to join the exclusive representative in order to … give

2    them a voice in the representative's adoption of positions on particular issues … does not create

3    an unconstitutional inhibition on associational freedom").  Plaintiffs' decision to pay dues to

4    access member benefits is a classic enforceable exchange of mutual consideration.[7]

5          In any event, parties cannot rescind contracts simply because an alternative that was

6    available under the law at the time of formation is later held invalid.  This is consistent with the

7    general principle that parties cannot rescind their contractual commitments based on later

8    changes in the law.  For example, in *Coltec Indus., Inc. v. Hobgood*, 280 F.3d 262 (3d Cir. 2002),

9    a coal company attempted to rescind a contract in which it had agreed to make certain regular

10   payments to a benefit fund in exchange for the fund's agreement to accept a cap on the total

11   amount of the payments.  *Id*. at 267-68.  The company claimed it entered into the agreement

12   because of the existence of a statutory provision that the Supreme Court later held

13   unconstitutional.  *Id*.  The Third Circuit rejected the company's attempt to rescind the agreement,

14   reasoning "that a change in law does not, alone, justify such relief, even when the change is

15   based on constitutional principles."  *Id*. at 277.

16         Even in cases involving plea agreements—contracts that waive an individual's

17   fundamental right to personal liberty[8]—courts have consistently held that the fact that a

18   defendant may have accepted a plea agreement in part to avoid an alternative later deemed

19   unconstitutional does *not* constitute duress, and thus does *not* provide a basis for rescission.  In

20   *Brady v. United States,* 397 U.S. 742 (1970), for example, the Supreme Court held that a

21   defendant could not rescind his plea agreement even though he claimed he entered the plea under

22

23   _____

     [7] This case is nothing like the cases Plaintiffs have previously cited in support of their "duress" argument.  *See* Dkt.
24   33 at 15.  In *Garrity v. New Jersey*, 385 U.S. 493, 496 (1967), police officers were forced to choose "between self-
     incrimination or job forfeiture," and in *Spevack v. Klein*, 385 U.S. 511, 514 (1967), attorneys were forced to choose
25   between "disbarment and the deprivation of a livelihood" or asserting their right against self-incrimination.  Those
     cases involved punishment for exercising a constitutional right.  Here, Plaintiffs were free not to join the union, and
26   the representation fees they would have paid had they not decided to join the union were *lower* than the dues
     Plaintiffs affirmatively agreed to pay.  Stip. Facts ¶¶8, 15.

27   [8] *See Puckett v. United States*, 556 U.S. 129, 137 (2009) ("[P]lea bargains are essentially contracts.").

DEFENDANT WFSE'S MOTION FOR SUMMARY JUDGMENT
(18-cv-05620) - 17

YOUNGLOVE & COKER, P.L.L.C.
WESTHILLS II OFFICE PARK
1800 COOPER POINT RD SW, BLDG 16
PO BOX 7846
OLYMPIA, WASHINGTON 98507-7846
(360) 357-7791

the pressure induced by a death penalty statute later found by the Court to have been

unconstitutional.  *See id.* at 756-57 ("[A] voluntary plea of guilty intelligently made in the light

of the then applicable law does not become vulnerable because later judicial decisions indicate

that the plea rested on a faulty premise.").

Similarly, in *Dingle v. Stevenson,* 840 F.3d 171, 175 (4th Cir. 2016), the defendant

pleaded guilty to avoid the death penalty for a crime he had committed as a juvenile.  Although

the Supreme Court later held that the juvenile death penalty is categorically unconstitutional,

*Roper v. Simmons,* 543 U.S. 551 (2005), the Fourth Circuit refused to permit rescission of the

guilty plea, reasoning that the voluntariness of the defendant's plea had to be evaluated "under

the law as it existed at the time," *Dingle,* 840 F.3d at 175.  The Court explained that:

> Contracts in general are a bet on the future.  Plea bargains are no different: a classic guilty plea permits a defendant to gain a present benefit in return for the risk that he *may have to forego future favorable legal developments*.  Dingle received that present benefit—avoiding the death penalty and life without parole—under the law as it existed at the time.  Although *Roper*, in hindsight, altered the calculus underlying Dingle's decision to accept a plea agreement, it does not undermine the voluntariness of his plea.  Some element of pressure exists in every deal, as the tradeoff between present certainty and future uncertainty is emblematic of the process of plea bargaining.  *Brady* makes all that exceptionally clear and in following its teachings we find no infirmity in the plea that Dingle entered.

*Id*. at 175-76 (emphasis added).[9]

The circumstances Plaintiffs complain of here pale in comparison to those in *Brady* and

*Dingle*, yet in those cases the agreements were enforceable notwithstanding the subsequent court

opinions and notwithstanding that the agreements waived constitutional rights.  Nothing in *Janus*

remotely addresses this issue, so *Janus* does not change settled precedent that a subsequent court

opinion does *not* make an agreement voidable simply because, had the opinion been issued

earlier, it might have impacted a party's decision to enter into the agreement.

---

[9] Similarly, a criminal defendant cannot withdraw a guilty plea made as part of a plea agreement on the ground that the prosecution and defense made a mutual mistake of law when entering into that agreement.  *See U.S. v. Zweber*, 913 F.2d 705, 711 (9th Cir. 1990), *superseded on other grounds by statute* (defendant not entitled to withdraw guilty plea based on mutual error by prosecution and defense in determining that defendant was entitled to downward departure); *U.S. v. Oliveros-Orosco*, 942 F.2d 644, 646 (9th Cir. 1991) (defendant may not withdraw guilty plea even though neither defense nor prosecution contemplated he would be sentenced as career offender).

YOUNGLOVE & COKER, P.L.L.C.
WESTHILLS II OFFICE PARK
1800 COOPER POINT RD SW, BLDG 16
PO BOX 7846
OLYMPIA, WASHINGTON 98507-7846
(360) 357-7791

3.      **Plaintiffs' "waiver" argument misunderstands the right at issue**

Plaintiffs also contend that the contracts they voluntarily entered with WFSE are unenforceable because "[t]he dues deduction cards contain no language indicating that a First Amendment right was being, or potentially being, waived," and "contain no language indicating that they operated as a waiver, or potential waiver, of a First Amendment right." Amended Complaint (Dkt. 21) ¶¶35-36. The Constitution does not require the equivalent of *Miranda* warnings in private contracts. The Supreme Court in *Cohen* did not conduct a separate "waiver" analysis or require magic words. Rather, the Court reasoned that the doctrine of promissory estoppel simply "requires those who make certain kinds of promises to keep them," any obligations created by that doctrine are "self-imposed," and the application of promissory estoppel law therefore does not "offend the First Amendment." 501 U.S. at 670-72, 669. The same is true with respect to the enforcement of Plaintiffs' contracts here.

Plaintiffs' theory that they could not have waived their First Amendment rights before *Janus* (because those rights were not established until *Janus*) fails to correctly identify the First Amendment right at issue here. The First Amendment provides a right not to be compelled as a condition of public employment to join a union and pay membership dues. That right was recognized in *Abood*, long before the *Janus* decision. And Plaintiffs concede that they were not compelled by their employer to join a union and agree to pay dues. Stip. Facts ¶8.

The First Amendment also provides (after *Janus*) a right not to be compelled as a condition of public employment to pay fees to a union one has not joined. But that is not the right at issue here because Plaintiffs *did* voluntarily join the union and affirmatively consent to pay the money they now seek to recover. *See Smith*, 2018 WL 6072806, at *1 (rejecting argument that plaintiff's consent to pay was not "knowing" before *Janus*, because "it's not the rights clarified in *Janus* that are relevant to [plaintiff] – [plaintiff's] First Amendment right to opt out of union membership was clarified in 1977 [in *Abood*], and yet he waived that right by affirmatively consenting to be a member of Local 2700"). The First Amendment does *not*

YOUNGLOVE & COKER, P.L.L.C.
WESTHILLS II OFFICE PARK
1800 COOPER POINT RD SW, BLDG 16
PO BOX 7846
OLYMPIA, WASHINGTON 98507-7846
(360) 357-7791

provide a right to voluntarily join a union on one's own preferred financial terms or to renege on voluntary financial commitments made in exchange for the rights and benefits of union membership.

The membership cards that Plaintiffs signed state that they are "voluntary and not a condition of my employment." Stip. Facts Exs. 11-17. Because joining the union was *not* a condition of public employment, the union's membership terms themselves do not involve "state action." *See supra* at 16 (citing the *Bain* decisions). Rather, as in *Cohen*, the state action arises (if at all) only in the enforcement of the obligation that each Plaintiff voluntarily and affirmatively assumed. As the Supreme Court held in *Cohen*, a state's enforcement of voluntarily assumed obligations that are binding as a matter of generally applicable contract law does not violate the First Amendment, even if the state could not have compelled the party to agree to those obligations in the first place. That is, by entering into a private contract enforceable under state law to pay money to a private organization, a party necessarily "waives" its objections to the state's enforcement of its obligation to pay that money.

The four cases cited by *Janus* in the passage about "waiver" do not aid Plaintiffs because they involved litigants who had not affirmatively undertaken any obligations, much less entered into bilateral contracts to perform those obligations in exchange for consideration. *See* 138 S.Ct. at 2486 (citing cases). *Johnson v. Zerbst*, 304 U.S. 458 (1938), addressed whether a pro se defendant had properly waived his Sixth Amendment right to counsel by failing to ask that counsel be appointed. *Id.* at 468-69. No affirmative commitment or contract was involved. In *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666 (1999), the Court rejected the argument that the State had "constructively" waived its sovereign immunity by engaging in activity that Congress decided to regulate. *Id.* at 675-76. The case involved no affirmative commitment or any mutual exchange of consideration. *Id.* Likewise, in *Knox v. Service Employees International Union, Local 1000*, 567 U.S. 298 (2012),

YOUNGLOVE & COKER, P.L.L.C.
WESTHILLS II OFFICE PARK
1800 COOPER POINT RD SW, BLDG 16
PO BOX 7846
OLYMPIA, WASHINGTON 98507-7846
(360) 357-7791

1  the Court held that nonmembers of a union could not be deemed to consent to a union political

2  assessment through their silence.  *Id.* at 315, 322.

3        Finally, in *Curtis Publishing Co. v. Butts*, 388 U.S. 130 (1967), the publishing company

4  litigant in a defamation case did not raise in the trial court the libel defense that the Supreme

5  Court later recognized in *New York Times v. Sullivan*, 376 U.S. 254 (1964).  *See Curtis*

6  *Publishing*, 388 U.S. at 142-43.  The Court held that the company should not be charged with

7  anticipating the *New York Times* rule and thus would not be found to have waived that defense

8  on appeal through its silence.  *Curtis Publishing*, 388 U.S. at 142-43.  Crucially, the company did

9  not enter into any affirmative agreement or receive consideration in exchange for not raising the

10  defense.  *Id.*  As *Cohen*, *Brady*, *Dingle*, and *Coltec* make clear, the outcome of *Curtis Publishing*

11  would have been different had the company entered into an agreement with the opposing party

12  under which, for example, the company's liability would be capped in exchange for the

13  company's affirmative commitment to submit the case for decision under a less demanding libel

14  standard.

15        Plaintiffs also are not assisted by *Fuentes v. Shevin*, 407 U.S. 67 (1972), a case they

16  previously relied upon.  The Court held in *Fuentes* that a consumer had not agreed to waive her

17  due process rights and authorize the seizure of her furniture without a hearing under state

18  prejudgment replevin statutes by signing a sales contract that merely stated in "small type" that

19  "in the event of default of any payment or payments, Seller at its option may take back the

20  merchandise."  *Id.* at 94; *see id.* at 95-96 ("The contracts included nothing about the waiver of a

21  prior hearing.").  By contrast, the deduction authorization cards here explicitly authorize the

22  exact deductions that Plaintiffs now challenge.  Those payments are the essence of the

23  agreement, akin to the consumer's promise to pay for the furniture in *Fuentes*, not an ancillary

24  "small type" waiver of constitutional protections.

25        The authorizations Plaintiffs signed each state, on a one-page, single-sided agreement:

26    -  "I hereby *voluntarily authorize* and direct my Employer to deduct from my pay each pay
        period" WFSE dues;

27

YOUNGLOVE & COKER, P.L.L.C.
WESTHILLS II OFFICE PARK
1800 COOPER POINT RD SW, BLDG 16
PO BOX 7846
OLYMPIA, WASHINGTON 98507-7846
(360) 357-7791

- I "authorize my Employer to remit such amount semi-monthly to the Union";

- "This *voluntary authorization and assignment shall be irrevocable for a period of one year* from the date of execution or until the termination date of the collective bargaining agreement …, whichever occurs sooner, and for year to year thereafter unless I give the Employer and the Union written notice of revocation [within a defined window period] …, *regardless of whether I am or remain a member of the Union*, unless I am no longer in active pay status in a WFSE bargaining unit"; and

- "I recognize that my authorization of dues deductions, and the continuation of such authorization from one year to the next, is *voluntary and not a condition of my employment*."

Stip. Facts Exs. 11-17 (emphases added).  Plaintiffs' affirmative voluntary agreement to the deductions at issue could not have been clearer.

## E.     Plaintiffs' proposed standard would itself violate the First Amendment

Plaintiffs' ultimate position appears to be that voluntary contracts between employees and public sector unions should be subject to special rules exempting them from the rules that apply to all other contracts, because public sector unions' speech is inherently political.  *See* Dkt. 33 at 5-6.  Plaintiffs' preferred rules, however, would themselves violate the First Amendment, in at least two different ways.

First, Plaintiffs' approach would violate the fundamental First Amendment prohibition on government discrimination against certain forms of protected activity based on the content of speech.  *See Police Dep't of City of Chicago v. Mosley*, 408 U.S. 92, 94 (1972) (law violated First Amendment because it distinguished between labor-related speech and other speech); *Reed v. Town of Gilbert, Ariz.*, 135 S.Ct. 2218, 2226 (2015) (content-based regulations are "presumptively unconstitutional and may be justified only if … they are narrowly tailored to serve compelling state interests").  Plaintiffs insist that they should be free to breach their contractual promises to pay the union because union speech is political.  They insist that no commitment to pay could be enforceable without *Miranda*-style, detailed, prior warnings specifically mentioning the First Amendment.  Yet no such rule applies to any other contract in which an individual agrees to make payments over a period of time in exchange for valuable

YOUNGLOVE & COKER, P.L.L.C.
WESTHILLS II OFFICE PARK
1800 COOPER POINT RD SW, BLDG 16
PO BOX 7846
OLYMPIA, WASHINGTON 98507-7846
(360) 357-7791

consideration.  Imposing Plaintiffs' preferred rule on public sector unions—and unions alone—because of the content of unions' expressive activity would violate the First Amendment.

The First Amendment protects both the decision to associate with and the decision not to associate with a union.  *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 622-23 (1984) (freedom of association protected by First Amendment includes both "right to associate" and "freedom not to associate").  Neither of those choices can be given preference by the law, yet Plaintiffs' proposed requirements would tip the scales in favor of one particular form of association by imposing special burdens or rules that favor that choice.  That is not consistent with the First Amendment.  This case is thus unlike cases involving the waiver of the right to due process, to counsel, or to avoid self-incrimination.  The law provides special protections against "waivers" of those rights.  In this context, in contrast, an employee's voluntary choice to either join or not join the union involves the *exercise* of valid and protected First Amendment rights—no matter which option the employee chooses.

Second, Plaintiffs' proposed regime would also violate the First Amendment by "unconstitutionally burden[ing] th[e] freedom [of association]" through "intrusion into the internal structure or affairs of an association."  *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000) (internal quotation marks omitted).  Plaintiffs' preferred regime would nullify contracts between unions and their *members* on grounds that are not applicable to other contracts—including contracts between other associations and their members.  In doing so, Plaintiffs' proposed rules would impermissibly intrude into the internal affairs of unions and their relationships with their own members.  By impermissibly restricting a union member's freedom to enter enforceable voluntary agreements with her own union, Plaintiffs' proposed regime would violate the First Amendment.

## CONCLUSION

For all these reasons, Plaintiffs' claims fail as a matter of law on the undisputed stipulated facts, and thus summary judgment for WFSE should be granted.

DEFENDANT WFSE'S MOTION FOR SUMMARY JUDGMENT
(18-cv-05620) - 23

YOUNGLOVE & COKER, P.L.L.C.
WESTHILLS II OFFICE PARK
1800 COOPER POINT RD SW, BLDG 16
PO BOX 7846
OLYMPIA, WASHINGTON 98507-7846
(360) 357-7791

1   DATED this 21st day of December, 2018.        Respectfully submitted,

2

3                                                 /s/ Edward Younglove
                                                  Edward Earl Younglove III, WSBA #5873
4                                                 YOUNGLOVE & COKER, P.L.L.C.
                                                  Attorneys At Law
5                                                 Westhills II Office Park
                                                  1800 Cooper Point Rd Sw, Bldg 16
6                                                 PO Box 7846
                                                  Olympia, Washington 98507-7846
7                                                 (360) 357-7791
                                                  edy@ylclaw.com
8

9                                                 /s/ Scott A. Kronland
                                                  Scott A. Kronland, *Pro Hac Vice*
10                                                P. Casey Pitts, *Pro Hac Vice*
                                                  Matthew J. Murray, *Pro Hac Vice*
11                                                Kristin M. García, *Pro Hac Vice*
                                                  ALTSHULER BERZON LLP
12                                                177 Post Street, Suite 300
                                                  San Francisco, CA 94108
13                                                (415) 421-7151
                                                  skronland@altshulerberzon.com
14                                                cpitts@altshulerberzon.com
                                                  mmurray@altshulerberzon.com
15                                                kgarcia@altshulerberzon.com
16

17                                                *Attorneys for Defendant Washington Federation of
                                                  State Employees*
18

19

20

21

22

23

24

25

26

27

DEFENDANT WFSE'S MOTION FOR SUMMARY JUDGMENT
(18-cv-05620) - 24

YOUNGLOVE & COKER, P.L.L.C.
WESTHILLS II OFFICE PARK
1800 COOPER POINT RD SW, BLDG 16
PO BOX 7846
OLYMPIA, WASHINGTON 98507-7846
(360) 357-7791

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of December, 2018, I electronically filed this

DEFENDANT WFSE'S MOTION FOR SUMMARY JUDGMENT with the Clerk of the Court

using the CM/ECF system, which will send notification of such filing to the below-listed:

James G. Abernathy
Hannah S. Sells
Christi C. Goeller
Caleb Jon Vandenbos
Freedom Foundation
P.O. Box 552
Olympia, Washington 98507
(360) 956-3482
jabernathy@freedomfoundation.com
hsells@freedomfoundation.org
cgoeller@freedomfoundation.org
cvandenbos@freedomfoundation.com

*Attorneys for Plaintiffs*

DATED this 21st day of December, 2018, at San Francisco, California.

By:      /s/ Scott A. Kronland
         Scott A. Kronland, *Pro Hac Vice*
         ALTSHULER BERZON LLP
         177 Post Street, Suite 300
         San Francisco, CA 94108
         (415) 421-7151
         skronland@altshulerberzon.com

DEFENDANT WFSE'S MOTION FOR SUMMARY JUDGMENT
(18-cv-05620) - 25

YOUNGLOVE & COKER, P.L.L.C.
WESTHILLS II OFFICE PARK
1800 COOPER POINT RD SW, BLDG 16
PO BOX 7846
OLYMPIA, WASHINGTON 98507-7846
(360) 357-7791